[224 N.C. App. 52 (2012)]

IN THE MATTER OF: J.L.H.

No. COA12-452

Filed 4 December 2012

### 1. Termination of Parental Rights—willfully leaving child in foster care—lack of reasonable progress

The trial court properly terminated respondent's parental rights on the basis of willfully leaving her child in foster care for more than twelve months without showing reasonable progress. The trial court's findings demonstrated that, although respondent had participated in some services, her failure to participate with her own mental health treatment and her inconsistency in participating in the child's therapy was not reasonable progress under the circumstances.

### 2. Termination of Parental Rights—best interests of child—written findings required

A termination of parental rights order was remanded for further findings concerning the best interests of the child where the trial court did not make the written findings required by N.C.G.S. § 7B-1110 (2011). As amended, the statute explicitly requires written findings and the prior cases approving evident consideration of the factors without findings are no longer relevant. In this case the issues of whether termination would aid in the accomplishment of the permanent plan and the quality of the bond between the child and respondent were raised during the termination hearing, but the trial court did not make written findings.

Appeal by respondent-mother from order entered 1 February 2012 by Judge Kimberly Best-Staton in Mecklenburg County District Court. Heard in the Court of Appeals 23 October 2012.

*Twyla Hollingsworth-Richardson, for petitioner-appellee Mecklenburg County Department of Social Services, Youth and Family Services.*

*M. Carridy Bender, for Guardian ad Litem.*

*Rebekah W. Davis, for respondent-appellant mother.*

CALABRIA, Judge.

**IN RE J.L.H.**

[224 N.C. App. 52 (2012)]

Respondent-mother ("respondent") appeals from the trial court's order terminating her parental rights to J.L.H. ("Jennifer").[1] We affirm in part and remand for further findings in part.

On 13 January 2010, the Mecklenburg County Department of Social Services, Youth and Family Services ("YFS") filed a juvenile petition alleging that Jennifer was a neglected and dependent juvenile. The petition included allegations of improper supervision, sexual abuse, domestic violence, and substance abuse. At that time, the trial court ordered YFS to assume custody of Jennifer for placement in foster care. On 17 February 2010, the trial court adjudicated Jennifer a neglected and dependent juvenile pursuant to a mediated agreement with respondent.

In the following months, the trial court conducted several review and permanency planning hearings. On 14 February 2011, the trial court entered a written order, pursuant to a hearing on 3 February 2011, directing YFS to file a termination of parental rights petition within 60 days. On 11 February 2011, YFS filed a petition to terminate respondent's parental rights on the grounds of neglect, willfully leaving Jennifer in foster care for more than twelve months without showing reasonable progress under the circumstances, and willfully failing to pay a reasonable portion of the cost Jennifer's care.

On 21 and 22 September 2011 and 21 and 22 November 2011, the trial court conducted the termination hearing. On 1 February 2012, the trial court entered an order terminating respondent's parental rights on the basis of neglect, willfully leaving Jennifer in foster care for more than twelve months without showing reasonable progress, and willfully failing to pay a reasonable portion of the cost of care of the children.[2] Respondent appeals.

## II.  Adjudication

[1] Respondent argues that the trial court erred in concluding that grounds existed to terminate her parental rights. We disagree.

"The standard of review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the con-

---

1. A pseudonym is used to protect the juvenile's privacy and for ease of reading.

2. The trial court's order also terminated the parental rights of Jennifer's father. However, the father neither attended the termination hearing nor appealed the trial court's order.

clusions of law." *In re Clark,* 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984). "[T]he trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." *In re Helms,* 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997).

Pursuant to N.C. Gen. Stat. § 7B 1111(a)(2), a court may terminate parental rights when "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B 1111(a)(2) (2011). The willful leaving of the juvenile in foster care is "something less than willful abandonment" and "does not require a showing of fault by the parent." *In re Oghenekevebe,* 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996)(citations omitted).

Respondent argues, in part, that the trial court erred in concluding that termination was appropriate on this ground because she did everything she was told to do by petitioner. However, this Court has previously held that a finding of this ground may be made even when the parent has made some effort to regain custody of the child because the parent must also show reasonable and positive progress in correcting the conditions which led to the juvenile's removal. *See In re Nolen,* 117 N.C. App. 693, 699-700, 453 S.E.2d 220, 224-25 (1995).

To support its conclusion that respondent willfully left Jennifer in foster care for more than twelve months without making reasonable progress under the circumstances, the trial court made the following findings in the adjudication portion of the termination order:

> 11. The respondent mother is still not participating in her own therapy. If the mother cannot address her own mental health needs, she cannot address [Jennifer's] traumatization. The mother has expressed the opinion during this Court's involvement as it relates to [Jennifer's] sexual abuse by her sibling, . . . that "she just needs to get over it"! [Respondent] has not taken the steps necessary to address the issues which brought [Jennifer] into custody, and has not recognized the impact of [Jennifer's] sexual victimization.
>
> 12. The respondent mother agreed that she would comply with therapy for herself and [Jennifer]. The respondent mother attended two therapy appointments with

[Jennifer] in May 2011, attended no therapy appointments in June 2011, attended two therapy appointments in July 2011, attended no appointments in August 2011, attended one therapy appointment in September 2011, and has not returned since September 2011 to therapy.

13. As a part of the respondent mother's family service agreement or case plan, [respondent] was ordered to complete domestic violence counseling, substance abuse treatment, parenting education, mental health treatment, and engage in therapy with [Jennifer] and her sibling.

14. The respondent mother complied with elements of her domestic violence family service agreement obligation. [Respondent] completed the Women's Commission program in July 2010. [Respondent] completed parenting education in February 2011.

Respondent specifically challenges findings 11, 12, and 14 as unsupported by the evidence.[3] Since finding of fact 13 is unchallenged, it is presumed to be correct and supported by the evidence. *See In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982).

The record provides competent evidence to support findings of fact 11 and 12. Jennifer's therapist, Denise Little ("Ms. Little"), testified to respondent's numerous missed appointments and failure to participate in Jennifer's therapy. Ms. Little also testified that respondent's involvement was necessary to Jennifer's recovery and to respondent's understanding of the impact of sexual abuse on her child.

YFS social worker assistant Leslie Simmons ("Ms. Simmons") testified that she observed inappropriate touching between Jennifer and her brother during visits and that respondent failed to stop this behavior. YFS senior social worker Lynda Peperak ("Ms. Peperak") testified about respondent's overall performance on her case plan goals and behavior throughout YFS's interaction with respondent. Ms. Peperak reported respondent's inappropriate comments that Jennifer "should just get over [her sexual abuse]" and that "every child is

---

3. We note that respondent challenges other findings of fact made by the trial court in its order terminating her parental rights; however, we need not address the additional arguments on the trial court's other findings of fact because they are not relevant to this ground for termination. Thus, any error in those findings would not constitute reversible error. *See In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006).

**IN RE J.L.H.**

[224 N.C. App. 52 (2012)]

touched inappropriately." Ms. Peperak also described respondent's participation in therapy, the many accommodations provided to respondent to encourage her to attend Jennifer's therapy, and respondent's apathetic attitude towards the lessons offered in domestic violence counseling, parenting classes, and therapy generally.

Finally, psychologist Dr. Terri Watters ("Dr. Watters") testified regarding her psychological evaluations of respondent. The evaluations revealed respondent's narcissistic traits. The court accepted into evidence and considered the Parenting Capacity Evaluation ("PCE") which Dr. Watters wrote. In her PCE, Dr. Watters expressed concern that respondent would seek out another violent relationship if she failed to address her own mental health needs. Thus, findings of fact 11 and 12 were supported by clear, cogent, and convincing evidence.

As to finding of fact 14, respondent takes issue with the portion of the finding which states that she "complied with elements of her domestic violence service agreement obligation." Respondent contends that this finding implies that she did not comply with the totality of the agreement. Respondent argues that, under the agreement, she was required to obtain an assessment and follow through on all recommendations and that she did what she was told.

Respondent is correct that her agreement required her to complete a domestic violence assessment and follow all treatment recommendations. Specifically, the agreement required her "to participate in Domestic Violence treatment *to learn about and engage in healthy relationships.*" (Emphasis added). However, Ms. Peperak testified that even though respondent had completed a twelve-week program at the Women's Commission, she had not implemented the skills she had learned there. For example, Ms. Peperak testified that respondent failed to walk away or contact law enforcement when respondent "ran into" Jennifer's father. Based upon Ms. Peperak's testimony, we conclude finding of fact 14 is supported by clear, cogent and convincing evidence.

The trial court's findings demonstrate that, although respondent had participated in some services, her failure to participate with her own mental health treatment and her inconsistency in participating in Jennifer's therapy was not reasonable progress under the circumstances. Therefore, the trial court's findings, which were supported by competent evidence, supported its conclusion that a ground existed to terminate respondent's parental rights because respondent willfully left Jennifer in foster care for more than twelve months and

failed to make reasonable progress to correct the conditions which led to Jennifer's removal.

Since we have found that the trial court properly terminated respondent's parental rights on the basis of her willfully leaving Jennifer in foster care for more than twelve months without showing reasonable progress, it is unnecessary to address her arguments on the remaining grounds found by the trial court. *See In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426-27 (2003).

### III. Best Interests

**[2]** Respondent argues that the trial court erred in concluding it was in Jennifer's best interests to terminate her parental rights. Specifically, respondent contends that the trial court failed to make the necessary findings of fact required by N.C. Gen. Stat. § 7B-1110. We agree.

The determination of whether termination is in the best interests of the minor child is governed by N.C. Gen. Stat. § 7B-1110.

> In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2011). "We review the trial court's decision to terminate parental rights for abuse of discretion." *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). The trial court is "subject to reversal for abuse of discretion only upon a showing . . . that the challenged actions are manifestly unsupported by reason." *Clark v. Clark*, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980).

IN RE J.L.H.

[224 N.C. App. 52 (2012)]

In the instant case, the trial court made the following findings regarding the best interests of Jennifer:

> The best interests of [Jennifer] would be served by the termination of parental rights of both respondent parents with respect to this juvenile.
>
> [Jennifer] is in a placement and is being cared for appropriately.
>
> . . .
>
> [Jennifer] is only seven-years-old [sic] and is capable of being adopted. [Jennifer's] therapeutic needs are being met and she is progressing well and thriving in her current placement.
>
> [Jennifer] is not in a foster/adopt placement, but the Court has no doubt she will be adopted.

However, the trial court made no findings which reflected consideration of N.C. Gen. Stat. § 7B-1110(a)(3), "whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile," or of N.C. Gen. Stat. § 7B-1110(a)(4), "the bond between the juvenile and the parent." Although the trial court concludes that Jennifer likely will be adopted, it fails to specifically state that termination of respondent's parental rights is necessary to achieve that permanent plan. Furthermore, there was testimony at the hearing and evidence in the record relevant to the bond between respondent and Jennifer. Dr. Watters testified that there was "no doubt in [her] mind that there's a bond between" Jennifer and respondent. She also testified that Jennifer respects respondent, and that Jennifer and respondent seem to enjoy their time together. Ms. Simmons also testified that she believed there was a bond between Jennifer and respondent.

However, in therapy, Jennifer stated that she misbehaved at school and in foster care, because she was afraid that she would be sent back to her mother if she was good. In addition, Jennifer's incidents of poor behaviors increased after visits with respondent. Finally, Jennifer also stated that she did not trust her mother to keep her safe from further sexual abuse. Thus, the bond between Jennifer and respondent was relevant to the trial court's best interests determination. Nevertheless, while the trial court was required to consider the statutory factors in N.C. Gen. Stat. § 7B-1110(a) and "make written findings regarding [those] that are relevant," it failed to do so.

IN RE J.L.H.

[224 N.C. App. 52 (2012)]

Although petitioner acknowledges that the trial court did not make explicit findings on all of the relevant statutory factors, it still contends that the trial court's order is sufficient under this Court's decision in *In re S.C.H.*, 199 N.C. App. 658, 682 S.E.2d 469 (2009). *In S.C.H.*, the Court held that, "[a]lthough the trial court may have not made a specific finding addressing N.C. Gen. Stat. § 7B-1110(a)(4)," there was no abuse of discretion so long as "it [wa]s apparent that the trial court did consider" that factor. *Id.* at 668, 682 S.E.2d at 475. Respondent argues that there is also evidence in the instant case that the trial court considered all relevant factors in N.C. Gen. Stat. § 7B-1110.

However, at the time *S.C.H.* was decided, a different version of N.C. Gen. Stat. § 7B-1110 was in effect. This previous version of the statute stated, in relevant part:

> After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. In making this determination, the court *shall consider the following*:

N.C. Gen. Stat. § 7B-1110(a) (2009)(emphasis added).

In 2011, N.C. Gen. Stat. § 7B-1110(a) was amended for all juvenile actions "filed or pending on or after" 1 October 2011. *See* 2011 N.C. Sess. Laws 295. As noted above, the current version of the statute directs the trial court to "consider the following criteria *and make written findings regarding the following that are relevant*." N.C. Gen. Stat. § 7B-1110(a)(2011) (emphasis added). Therefore, due to this change in statutory language, *S.C.H.* and other cases similar to it are no longer applicable to this Court's evaluation of a trial court's best interests determination under N.C. Gen. Stat. § 7B-1110. The amended statute now explicitly requires the trial court to make written findings of fact on all relevant factors from N.C. Gen. Stat. § 7B-1110(a) when it determines whether termination is in the juvenile's best interests.

In the instant case, the issues of whether termination will aid in the accomplishment of the permanent plan and the quality of the bond between Jennifer and respondent were raised during the termination hearing, but the trial court did not make any written findings regarding these factors. As a result, the trial court's order does not comply with the requirements of N.C. Gen. Stat. § 7B-1110 (2011). Since the record contains evidence from which the court could make

MORGAN v. NASH CNTY.

[224 N.C. App. 60 (2012)]

findings as to this factor, we remand for entry of appropriate findings pursuant to N.C. Gen. Stat. § 7B-1110(a). *See In re E.M.*, 202 N.C. App. 761, 765, 692 S.E.2d 629, 631 (2010).

## IV.  Conclusion

The trial court correctly concluded that grounds existed to terminate respondent's parental rights on the ground of her willfully leaving Jennifer in foster care for more than twelve months without showing reasonable progress. Consequently, we affirm the adjudication portion of the trial court's order. However, the trial court failed to make findings on relevant factors included in N.C. Gen. Stat. § 7B-1110(a) when determining whether termination of respondent's parental rights was in Jennifer's best interests. Accordingly, we remand the disposition portion of the trial court's order for further findings as required by N.C. Gen. Stat. § 7B-1110(a).

Affirmed in part and remanded in part.

Judges BEASLEY and THIGPEN concur.

