An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e   P r o c e d u r e .

NO. COA14-209
NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

IN THE MATTER OF:                    Rutherford County
                                     No. 11 JT 039
E.L.H.,
     A Minor Child.

_____

IN THE MATTER OF:                    Rutherford County
                                     No. 11 JT 040
R.N.H.,
     A Minor Child.

Appeal by respondent from orders entered 2 December 2013 by Judge Laura A. Powell in Rutherford County District Court. Heard in the Court of Appeals 30 June 2014.

*Merri Burwell Oxley, for petitioner-appellee.*

*Michael E. Casterline, for respondent-appellant.*

*K&L Gates LLP, by Leah D'Aurora Richardson, for Guardian ad Litem.*

MARTIN, Chief Judge.

Respondent appeals from orders terminating her parental rights to her minor children E.L.H. and R.N.H.  We affirm in

part and remand in part.

On 6 April 2011, the Rutherford County Department of Social Services ("DSS") filed petitions alleging that E.L.H., age four, and R.N.H., age two, were neglected and dependent juveniles. The court entered orders adjudicating them as dependent juveniles on 17 June 2011. In its adjudication orders, the court found that DSS became involved with the family after it received a report, which was subsequently substantiated, concerning domestic violence between respondent and her boyfriend. The report also raised concerns about drug usage and about respondent's untreated mental health issues. Respondent was subsequently arrested on charges of driving without an operator's license and two counts of misdemeanor child abuse. Due to her incarceration, the children were placed in kinship care with respondent's sister until 6 April 2011, when the children's maternal relatives notified DSS that they could no longer keep the children. Respondent was asked to provide an alternative placement but no family members were willing to take the children. The address of the children's father was unknown.

After a permanency planning hearing on 13 June 2013, the court entered an order in which it found that, in late January 2013, respondent sold marijuana on two separate occasions in her home. These transactions were recorded by

audio and video. A convicted felon who possessed a stolen firearm was in the residence with respondent for one of these transactions and "actually participated in said sale." After determining that returning the minor children to respondent's home "would be contrary to the welfare" of the children, the court changed the permanent plan to adoption and ordered DSS to pursue termination of respondent's parental rights.

DSS filed petitions to terminate respondent's parental rights to both minor children on 1 August 2013. After hearing the matter, the court entered orders on 2 December 2013 terminating respondent's parental rights to both minor children on the grounds that she willfully left the children in foster care for more than twelve months without making reasonable progress in correcting the conditions that led to the removal of the children pursuant to N.C.G.S. § 7B-1111(a)(2). The court concluded that termination of respondent's parental rights was in the best interests of each child. Respondent appeals from these orders.

_____

Respondent first contends the trial court erred by terminating her parental rights to the minor children based on the court's conclusion that she willfully left the children in foster care for more than twelve months without showing that she

had made reasonable progress in correcting the conditions which led to their removal. She asserts that, in reaching this conclusion, the trial court "ignored" evidence of her "considerable efforts to improve her own mental health," as well as "the improvements she made in the areas of household stability and parenting."

"Termination of parental rights is a two-step procedure." *In re Shepard*, 162 N.C. App. 215, 221, 591 S.E.2d 1, 5, *disc. review denied*, 358 N.C. 543, 599 S.E.2d 42 (2004). "During the initial adjudication phase of the trial, the petitioner seeking termination must show by clear, cogent, and convincing evidence that grounds exist to terminate parental rights." *Id.* "A finding of any one of those grounds is sufficient to support termination of parental rights." *Id.* "If the petitioner succeeds in establishing the existence of any one of the statutory grounds listed in [N.C.G.S.] § 7B-1111, the trial court moves to the second, or dispositional, stage, where it determines whether it is in the best interests of the child to terminate the parental rights." *Id.* (internal quotation marks omitted).

"The standard of review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in

turn, support the conclusions of law." *Id.* at 221, 591 S.E.2d at 6 (internal quotation marks omitted). "We then consider, based on the grounds found for termination, whether the trial court abused its discretion in finding termination to be in the best interest of the child." *Id.* at 222, 591 S.E.2d at 6.

N.C.G.S. § 7B-1111(a)(2) provides, in relevant part, that the trial court may terminate parental rights upon a finding that "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2013). To sustain a trial court's decision to terminate parental rights under this statutory ground, we must "determine that there was clear, cogent, and convincing evidence that (1) respondents 'willfully' left the juvenile in foster care for more than twelve months, and (2) that each respondent had failed to make 'reasonable progress' in correcting the conditions that led to the juvenile's removal from the home." *In re Baker*, 158 N.C. App. 491, 494, 581 S.E.2d 144, 146 (2003). "Willfulness may be found under this statute where the parent, recognizing her inability to care for the child, voluntarily leaves the child in foster

care." *In re Oghenekevebe*, 123 N.C. App. 434, 440, 473 S.E.2d 393, 398 (1996). Additionally, "[w]illfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175, *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001). Further, "[w]illfulness may be found where[,] even though a parent has made some attempt to regain custody of the child, the parent has failed to show reasonable progress or a positive response to the diligent efforts of DSS." *In re Clark*, 159 N.C. App. 75, 84, 582 S.E.2d 657, 662 (2003) (internal quotation marks omitted).

In the present case, respondent does not dispute that, at the time this matter was heard by the trial court, the minor children had been in foster care for 939 days, which represented one-third of E.L.H.'s life and one-half of R.N.H's life to date. Respondent contends only that the court erred by determining that she had left the children in foster care for more than twelve months "without showing, to the satisfaction of the [c]ourt, that reasonable progress under the circumstances ha[d] been made in correcting those conditions that led to the removal of the juvenile[s]." However, the trial court's unchallenged findings of fact reflect that the court removed the minor children from respondent's home in 2011 "due to reports of

domestic violence in the home," and due to "concerns about the respondent mother's drug usage and mental health status." The court also found that, in late January 2013, respondent participated in two separate illegal drug sales at her home, was subsequently arrested for two counts of possession with intent to sell and deliver marijuana, and later pled guilty to these charges. The court further found that, on 5 February 2013, respondent "was involved in an illegal gun sale in which she assisted" "a convicted felon and known gang member," who was present during the sale, by frisking an informant who arrived to purchase the gun. The court also found the following as to each child:

> 21. By her own testimony, the respondent mother did not think there was anything wrong with a convicted felon selling a firearm from her residence.
>
> 22. The respondent mother also thinks her association with drug dealers and a convicted felon selling firearms is acceptable and even believes she has the blessing of her therapist to continue to associate with such people and thought this association was good for her.
>
> 23. The respondent mother's judgment is clearly impaired, not by substances but by her mental illness.
>
> 24. The [c]ourt is not aware of any other services that could be offered to the respondent mother that would modify her

behavior such that it would be safe to return the [minor children] to the respondent mother's care.

25. That the respondent mother's home where she sold illegal controlled substances and where a convicted felon was present with a stolen firearm is not a safe environment for the [minor children].

26. That the [minor children have] been in foster care for the last 30 months.

Although respondent directs this Court's attention to evidence that she complied with DSS's recommendations to complete parenting classes, obtain appropriate housing, and participate in substance abuse and mental health assessments and follow-up treatment, as we recognized above, "[w]illfulness may be found where[,] even though a parent has made *some* attempt to regain custody of the child, the parent has failed to show reasonable progress *or a positive response* to the diligent efforts of DSS." *See In re Clark*, 159 N.C. App. at 84, 582 S.E.2d at 662 (emphases added) (internal quotation marks omitted). Thus, because the unchallenged findings—which are binding on appeal, *see Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.")—support the trial court's conclusion that respondent willfully left the

minor children in foster care without making reasonable progress in correcting the conditions which led to their removal from the home, we overrule this issue on appeal.

Respondent next contends the trial court erred by failing to make written findings concerning the bond between respondent and the minor children when determining whether terminating her parental rights to E.L.H. and R.N.H. would be in each child's best interest.

In determining whether termination of parental rights is in the best interest of a child, the trial court is required to "consider" and "make written findings regarding the following that are relevant," N.C. Gen. Stat. § 7B-1110(a) (2013):

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

*Id.* While N.C.G.S. § 7B-1110(a) "requires the trial court to

'consider' all six of the listed factors," *In re D.H.*, __ N.C. App. __, __, 753 S.E.2d 732, 735 (2014), "the court *must* enter written findings in its order concerning *only* those factors 'that are relevant.'" *Id.* at __, 753 S.E.2d at 735 (emphases added). Where issues with respect to one or more factors—for example, concerning "the quality of the bond between [a minor child] and respondent[—]were raised during [a] termination hearing, but the trial court did not make any written findings regarding these factors," *see In re J.L.H.*, __ N.C. App. __, __, 741 S.E.2d 333, 338 (2012), this Court has determined that the trial court erred and has remanded the matter to the trial court "for entry of appropriate findings pursuant to [N.C.G.S.] § 7B-1110(a)," *id.* at __, 741 S.E.2d at 338, where "the record contain[ed] evidence from which the court could make findings as to this factor." *Id.* at __, 741 S.E.2d at 338.

Here, the reports submitted by DSS to the trial court indicate that, prior to respondent's arrest, respondent was granted limited, unsupervised, weekly visitation with the minor children, which visits "went well," and that both children "were eager to live with" respondent. The guardian ad litem's report submitted in connection with the 24 April 2013 permanency planning hearing for both children indicates that E.L.H. "has expressed somewhat of an interest in returning to his mother,"

and that R.N.H. "is too young to be sure what he wants." The guardian ad litem recommended that respondent be allowed to "have many unsupervised visits with her children, as dictated by the [c]ourt, until their return to her is proven the absolute right thing for them."

During the dispositional portion of the termination proceedings, a DSS social worker testified that the children "are bonded with the mother." The social worker also testified that, after reunification efforts ceased, the children inquired about the welfare of their mother but did not appear to have issues concerning the cessation of their visitations with her. Respondent also testified with respect to the efforts she made to have the children returned to her care. She testified that she "put [the minor children] before [her] so much so that [she] ha[s] done lots of things that [she] did not want to do in their best interest for them and for only them." She also declared that she "love[s] them so much," and that she "would never harm them" or "allow them to be abused either." She further testified that, before the minor children were taken away from her, she kept a diary concerning E.L.H. every day, from the child's birth until he was eight months old. In light of the evidence presented to the trial court regarding the bond between respondent and the minor children, and in light of recent

decisions from this Court, we conclude that the foregoing evidence placed the statutory factor of the bond between respondent and the minor children into issue. Therefore, we hold that the trial court erred by failing to make a finding of fact concerning the bond between respondent and the minor children. Thus, we affirm the adjudicatory portion of the court's orders determining that E.L.H. and R.N.H. are dependent and that respondent willfully left the minor children in foster care for more than twelve months without showing, to the satisfaction of the trial court, that reasonable progress has been made in correcting those conditions that led to the removal of the minor children. With respect to the dispositional portion of the court's orders, we remand this matter to the trial court with instruction that the court make further findings of fact in accordance with N.C.G.S. § 7B-1110(a) concerning the bond between respondent and each child in order to determine whether termination of respondent's parental rights is in the best interest of the children.

Affirmed in part and remanded in part.

Judges ELMORE and HUNTER, JR. concur.

Report per Rule 30(e).