An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-309

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

IN THE MATTER OF:

                                  Mecklenburg County

                                  No. 12 JT 32

A.M.B.

Appeal by respondent-mother from order entered 16 December 2013 by Judge Elizabeth T. Trosch in Mecklenburg County District Court. Heard in the Court of Appeals 9 September 2014.

*Twyla Hollingsworth-Richardson for petitioner-appellee Mecklenburg County Department of Social Services.*

*J. Thomas Diepenbrock for respondent-appellant.*

*Womble Carlyle Sandridge & Rice, LLP, by Theresa M. Sprain and Carolyn C. Pratt, for guardian ad litem.*

STEELMAN, Judge.

The trial court's conclusion that termination of parental rights was in the best interests of the juvenile was supported by the findings of fact required under N.C. Gen. Stat. § 7B-1110(a).

I. Factual and Procedural History

On 20 January 2012, the Mecklenburg County Department of Social Services, Youth and Family Services (DSS) filed a petition alleging that A.B. was a neglected and dependent juvenile, based on reports that the child's mother, J.A.B. (mother) had engaged in domestic altercations in A.B.'s presence. The petition also alleged that during the previous six months mother had lived at five different residences and was evicted from each due to her behavior. On 20 January 2012 a non-secure custody order was entered granting DSS custody of A.B. On 12 April 2012, A.B. was adjudicated neglected based on mother's substance abuse and her "inability to manage her aggression." Following a permanency planning review hearing held on 10 January 2013, the trial court suspended reunification efforts and changed the permanent plan for A.B. to termination of parental rights and adoption.

On 15 March 2013, DSS filed a petition to terminate mother's parental rights, alleging that grounds existed to terminate mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect), (2) (failure to make reasonable progress), (3) (failure to pay reasonable child support) and (7) (abandonment). DSS also alleged that grounds existed to terminate the parental rights of A.B.'s father, whose identity was unknown, pursuant to N.C. Gen. Stat. § 7B-1111(a)(5) (2013).

On 16 December 2013, the trial court entered an order terminating mother's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2) and (3). The unknown father's parental rights were also terminated.

The present appeal is only by mother.

## II. Standard of Review

"The termination of parental rights statutes provide for a two-stage termination proceeding: an adjudication stage and a disposition stage. In the adjudication stage, the trial court must determine whether there exists one or more grounds for termination of parental rights under N.C. Gen. Stat. § 7B-1111(a). If the trial court determines that at least one ground for termination exists, it then proceeds to the disposition stage where it must determine whether terminating the rights of the parent is in the best interest of the child, in accordance with N.C. Gen. Stat. § 7B-1110(a)." *In re D.H.*, __ N.C. App. __, __, 753 S.E.2d 732, 734 (2014) (citing *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984)).

"We review the trial court's decision to terminate parental rights for abuse of discretion." *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002) (citation omitted). "'The trial court is subject to reversal for abuse of discretion only upon a showing . . . that the challenged actions are manifestly

unsupported by reason.'" *D.H.*, __ N.C. App. at __, 753 S.E.2d at 734 (quoting *In re J.L.H.*, __ N.C. App. __, __, 741 S.E.2d 333, 337 (2012) (internal quotation omitted)).

### III. Trial Court's Determination that Termination was in the Juvenile's Best Interests

Mother does not challenge the evidentiary support for the trial court's findings of fact or its determination that grounds existed to support termination of her parental rights, and does not argue that the court abused its discretion by concluding that it was in A.B.'s best interest for mother's parental rights to be terminated. Mother's sole argument on appeal is that the trial court erred in its determination that it was in the best interest of A.B. to terminate mother's parental rights by failing to make the findings required by N.C. Gen. Stat. § 7B-1110(a). We disagree.

Once a trial court determines that statutory grounds for termination exist, it must "determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a). This statute requires that in making its determination "the court shall consider the following criteria and make written findings regarding the following that are relevant"

> (1) The age of the juvenile.
> (2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

Although N.C. Gen. Stat. § 7B-1110(a) requires the trial court to consider all six of the enumerated factors, it is required to enter written findings of fact "concerning only those factors 'that are relevant.'" *D.H.* at __, 753 S.E.2d at 735 (citations omitted).

Mother argues that the trial court failed to make findings of fact on the age of the juvenile, whether termination of parental rights would aid in the accomplishment of the permanent plan, or concerning the bond between mother and the juvenile, as required by N.C. Gen. Stat. § 7B-1110(a)(1), (3) and (4) respectively. However, analysis of the trial court's order reveals that the court's findings sufficiently addressed the relevant factors.

Mother correctly notes that the trial court made no findings addressing A.B.'s age. However, mother does not identify any evidence that the child's age was a relevant factor in this case, and does not offer any argument as to the significance of this omission. We conclude the trial court did

not err by failing to make a specific written finding of fact concerning A.B.'s age. *See D.H.* at __, 753 S.E.2d at 735 ("Since respondent fails to point to any evidence in the record demonstrating that age was placed in issue as a relevant factor, such that it had an impact on the trial court's decision, we do not believe that the trial court erred in not making specific findings concerning the children's ages in its order.").

Mother also argues that the trial court failed to make findings pertaining to whether termination of her parental rights would aid in the accomplishment of the permanent plan for the juvenile. We first note that, since the permanent plan was adoption, termination of parental rights is clearly a prerequisite to achieving the permanent plan. In addition, N.C. Gen. Stat. § 7B-906.1(g) directs a trial court conducting a permanency planning hearing to determine "the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time." Thus, the trial court's findings regarding the need for "a safe, permanent home . . . within a reasonable period of time" are relevant to whether termination will achieve the permanent plan. In its order the trial court made a variety of findings illustrating the relationship between termination of mother's parental rights and the need to achieve

a safe permanent home for A.B. within a reasonable time, including the following:

. . .

3. [A.B.] was adjudicated neglected on 15 March 2012. . . .

. . .

14. [Prior to the adjudication of neglect], the mother had at least five different addresses[.]. . . All of these residences were disrupted due to the mother's behaviors.

. . .

20. From October 17, 2001 until . . . 2005, [mother] had seven referrals involving her children. As a result . . . mother's parental rights to her oldest three children were terminated.

. . .

22. [DSS] has been involved with the family since 2001 for issues related to [mother's] substance abuse, mental health, and history of altercations, aggressive behavior, as well as the lack of housing stability, . . . [and] the injurious environment of the juveniles. [Mother] has failed or refused to comply with recommended therapy services for her and substance abuse treatment since [2001.]

. . .

25. There is a risk to [A.B.'s] permanence, if placed in the home of the mother[,] due to the mother's pattern of coping that she displayed prior to custody and ever since; a style . . . illustrated by aggression, defensiveness and lack of insight. Her

pattern has led to conflict and criminal arrest.

34. [Mother] lacks verifiable employment and lacks stable housing. . . .

. . .

46. The juvenile is bonded to her placement provider and is doing extremely well in her placement. She functions as a member of the family. She is in a potential adoptive placement. The likelihood of [A.B.'s] adoption is high.

47. That while [A.B.] . . . knows [that mother is] her mother, [mother's] lack of insight into the [effect that] patterns . . . symptomatic of [her] mental illness have had on her ability to provide [a] safe and stable home . . . make termination of parental rights in [A.B.'s] best interests.

Since mother does not challenge these findings of fact, they are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). The court's findings of fact clearly illustrate the unlikelihood of any imminent change in mother's behavior and the resultant need to terminate parental rights in order to facilitate A.B.'s adoption. While the trial court did not explicitly state that termination of mother's parental rights would aid in the accomplishment of the permanent plan for the juvenile, it is apparent that the court considered this factor.

Mother also contends that the trial court failed to make sufficient written findings of fact regarding the bond between

mother and the juvenile. Although the court did not use the specific word "bond," it made numerous findings addressing mother's emotional and mental health issues and her lack of involvement with A.B., including the following:

. . .

26. [Mother's] psychological testing illustrated that she is an individual who is hostile, impulsive and acts out with minimal to no awareness or concern regarding consequences of her actions, and tends to blame others for altercations and conflicts.

27. [Mother's] psychological testing indicated that she is angry, paranoid and distrusting of others.

28. Dr. Hancock's evaluation included the following diagnoses for [mother]: Bipolar, Cannabis Dependence, and Narcissistic Personality Disorder with Antisocial Traits.

. . .

31. . . . [Mother] is not engaged in any known therapy and has not been engaged in any consistent therapy or mental health program since [A.B.] was placed in [DSS's] custody[.] [Mother] informed Dr. Hancock . . . that she does not need therapy.

32. . . . [Mother] was discharged from [the] Salvation Army Women's Shelter in late December 2012 due to "intolerable and belligerent behavior towards staff and residents."

33. At the 30 August 2012 hearing, [mother] was provided with an opportunity to visit [A.B.] at her daycare. [Mother] only visited with [A.B.] at her daycare four times between August 2012 and [the] 10 January

2013 court date despite being provided bus passes. [Mother] has not engaged in shared-parenting, although [it is] available. [Mother] did not . . . attend [A.B.'s] family counseling and community-based rehabilitation services . . . [or] the Children's Developmental Services appointments as recommended.

. . .

36. . . . [Mother] has not provided any consistent emotional or other support for [A.B.], and has not consistently taken advantage of opportunities to further develop a relationship with the child.

. . .

38. [Mother] is not engaged in any therapeutic, psychological or psychiatric services.

. . .

47. That while [A.B.] . . . knows [that mother is] her mother, [mother's] lack of insight into the [effect that] patterns . . . symptomatic of [her] mental illness have had on her ability to provide [a] safe and stable home . . . make termination of parental rights in [A.B.'s] best interests.

Mother's unwillingness to address serious mental health issues clearly affects her ability to form an appropriate bond with A.B., and her unwillingness to take advantage of the opportunities to spend time with A.B. further impacted the relationship between mother and child. The trial court's findings make it clear that the court considered the bond

between mother and child when determining that termination was in A.B.'s best interest.

The better practice is for a trial court to make findings that clearly track the statutory requirements for findings on relevant issues. However, although the trial court did not employ the specific language of the statute, the court's order adequately addressed how termination will facilitate the permanent plan and the bond between mother and child. As this is mother's only challenge to the termination order we conclude that the court did not err and that its order should be

AFFIRMED.

Judges CALABRIA and McCULLOUGH concur.

Report per Rule 30(e).