ARROWOOD, Judge.
Respondent appeals from an order terminating her parental rights to her minor child A.L.Z. ("Ann").[1] The father is not a party to this appeal. After careful consideration, we affirm the trial court's order.
I. Background
Respondent was living with Ann's father in Virginia Beach when she gave birth to Ann in March of 2012. In July 2012, after repeated instances of domestic violence between respondent and the father, respondent moved with Ann to North Carolina to live with respondent's father and step-mother, the petitioners. On 19 July 2012, petitioners were awarded emergency custody of Ann. Despite the emergency custody order, respondent moved back to Virginia with Ann on 10 August 2012 and lived with Ann's paternal aunt and uncle. On 15 October 2012, the trial court entered an order awarding petitioners temporary custody and control of Ann.
Respondent relapsed on drugs in the fall of 2012, and the paternal aunt and uncle kicked respondent out of their residence. The paternal aunt and uncle then sought and obtained an order in Virginia awarding them custody of Ann. In September 2013, respondent returned to North Carolina with Ann. On 30 July 2014, a Virginia court awarded petitioners sole legal custody over Ann and awarded visitation rights to the paternal aunt and uncle.
On 24 May 2016, petitioners filed a petition to terminate parental rights, alleging as grounds to terminate respondent's parental rights that: (1) respondent neglected the juvenile; (2) respondent willfully left the juvenile in placement outside of the home for more than twelve months without showing reasonable progress in correcting the conditions that led to the removal of the juvenile; and (3) respondent was incapable of providing for the proper care and supervision of the juvenile, such that the juvenile was dependent. See N.C. Gen. Stat. § 7B-1111(a)(1), (2), (6) (2015). Following a hearing on the petition, the trial court entered an order on 22 February 2017 terminating respondent's parental rights after adjudicating the existence of the first two grounds alleged in the petition. Respondent filed written notice of appeal on 9 March 2017.
II. Discussion
Respondent first contends that the trial court failed to protect Ann's best interests by failing to appoint her a guardian ad litem ("GAL") before proceeding with the termination case. Respondent argues that Rule 17 of the North Carolina Rules of Civil Procedure requires that a minor child be appointed a GAL in termination of parental rights proceedings, and that the issue is preserved on appeal despite a lack of objection at the hearing. N.C. Gen. Stat. § 1A-1, Rule 17 (2015). In the alternative, respondent contends that, even if the issue is not preserved on appeal, this Court should invoke Rule 2 of the Rules of Appellate Procedure to review the issue. See N.C. R. App. P. 2.
In the interest of brevity, we direct attention to this Court's decision in Matter of A.U., --- N.C. App. ----, 802 S.E.2d 917, 2017 WL 3027556 (2017) (unpublished). The respondent-mother in A.U. was represented by the same appellate counsel who represents respondent in this case, and the exact same arguments were raised in both cases in regard to this issue. In A.U., this Court held that N.C. Gen. Stat. § 7B-1108 (2015), not Rule 17, sets forth the procedures a court must follow in appointing a GAL for a minor in termination proceedings, and that that statute does not require a GAL to be appointed for the minor unless a response to the termination petition is filed denying material allegations. A.U., 2017 WL 3027556, **2-3. This Court further held in A.U. that the respondent-mother failed to preserve for appellate review the issue of the trial court's failure to appoint a GAL when she did not object at trial. Id. at **3. This Court declined the respondent-mother's invitation to invoke Rule 2, concluding that it was not "the rare case meriting suspension of our appellate rules[.]" Id. at **4-5 (citation omitted).
As an unpublished decision, A.U. is not controlling authority. N.C. R. App. P. 30(e)(3). Nonetheless, we find its reasoning persuasive and we hereby adopt it. In the present case, Ann was not required to have a GAL appointed given that no response to the petition was filed denying any of the material allegations. N.C. Gen. Stat. § 7B-1108. In any event, respondent did not object at trial to the court's failure to appoint a GAL for Ann, and respondent therefore failed to preserve this issue for appellate review. See In re A.D.N., 231 N.C. App. 54, 65-66, 752 S.E.2d 201, 209 (2013) ("[I]n order to preserve for appeal the argument that the trial court erred by failing to appoint the child a GAL, a respondent must object to the asserted error below." (citation omitted)), disc. review denied, 367 N.C. 321, 755 S.E.2d 626 (2014). Furthermore, Rule 2 is only to be invoked to "prevent manifest injustice to a party." N.C. R. App. P. 2. Respondent makes no argument that invocation of Rule 2 is necessary to prevent manifest injustice, and such an argument would not be supported by the facts of this case.
Respondent next argues that the trial court erred in failing to appoint counsel to represent Ann. Respondent did not object at trial to the court's failure to appoint counsel to represent Ann. For the reasons stated above, respondent's failure to object at trial precludes her from raising this issue on appeal, and we decline to invoke Rule 2 to review respondent's contention.
Respondent also argues that the trial court erred in failing to conduct a pretrial hearing to determine whether Ann should have been appointed a GAL prior to the termination hearing. Respondent's issue is preserved despite her failure to object in the lower court given that the trial court's failure to conduct a pre-trial hearing would be in contravention of a statutory mandate. See N.C. Gen. Stat. § 7B-1108.1(a) (2015) ("The court shall conduct a pretrial hearing."); In re E.K.H., 226 N.C. App. 448, 450, 739 S.E.2d 613, 614-15 (2013) (" '[W]hen a trial court acts contrary to a statutory mandate, the right to appeal the court's action is preserved, notwithstanding the failure of the appealing party to object at trial.' " (quoting State v. Golphin, 352 N.C. 364, 411, 533 S.E.2d 168, 202 (2000), cert. denied, 532 U.S. 931, 149 L.Ed. 2d 305 (2001) )).
Initially, we note that the record is silent as to whether a pre-trial hearing was conducted. Assuming arguendo that no pre-trial hearing was conducted, respondent makes no showing that she was prejudiced by the trial court's failure to conduct the pre-trial hearing. See E.K.H., 226 N.C. App. at 451, 739 S.E.2d at 615 (stating that, when the trial court violates a statutory mandate, the burden is on the respondent to show that she was prejudiced by that error). Respondent fails to demonstrate that she is entitled to relief on the basis of this contention.
Respondent next contends that the trial court erred in finding that grounds existed to terminate her parental rights. We conclude that the trial court correctly found grounds to terminate respondent's parental rights on the basis of neglect.
At the adjudicatory stage, the party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist. If the trial court concludes that the petitioner has proven grounds for termination, this Court must determine on appeal whether the court's findings of fact are based upon clear, cogent and convincing evidence and whether the findings support the conclusions of law. Factual findings that are supported by the evidence are binding on appeal, even though there may be evidence to the contrary. Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.
In re L.A.B., 178 N.C. App. 295, 298, 631 S.E.2d 61, 64 (2006) (internal quotation marks, citations, and alteration omitted).
N.C. Gen. Stat. § 7B-1111(a)(1) (2015) provides that a trial court may terminate parental rights upon a finding that the parent has neglected the juvenile. A neglected juvenile is, in part, one "who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; ... or who lives in an environment injurious to the juvenile's welfare[.]" N.C. Gen. Stat. § 7B-101(15) (2015). The determinative factors in terminating parental rights are "the best interests of the child and the fitness of the parent to care for the child at the time of the termination proceeding." In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) (emphasis omitted).
Respondent has not challenged any of the trial court's findings of fact as unsupported by clear and convincing evidence, and the court's findings are therefore binding on appeal.[2] In this case, the trial court made findings regarding respondent's past and present struggles with substance abuse, domestic violence, and self-sufficiency:
6. On July 16, 2012, Respondent Mother voluntarily relinquished physical custody of the juvenile to Petitioners and allowed the juvenile to remain with Petitioners through September 15, 2012.
7. Prior to relinquishing physical custody to Petitioners, both Respondent Mother and Respondent Father were unemployed, were unable to financially provide for the needs of the juvenile, engaged in domestic violence in the presence of the juvenile, suffered from substance abuse and regularly abused alcohol, prescription and/or illegal drugs in the presence of the juvenile.
8. On October 15, 2012, Petitioners were vested with the temporary care custody and control of the juvenile in case number 12 CVD 7881 which was issued by the District Court of Guilford County (hereinafter the Guilford County Order).
9. The Guilford County Order found as a finding of fact that Respondents did not have a suitable residence for the minor child and that Respondents posed a substantial risk of harm and abuse to the juvenile due to domestic violence between Respondents in the presence of the minor child and ongoing substance abuse by Respondents.
....
16. From October 15, 2012 through September 25, 2014, neither Respondent Mother nor Respondent Father maintained employment or independent housing sufficient to meet the needs of the minor child.
17. From October 15, 2012 through September 25, 2014, both Respondent Mother and Respondent [Father] continued to engage in acts of domestic violence.
18. From October 15, 2012 through September 25, 2014, both Respondent Mother and Respondent Father continued to suffer from issues related to substance abuse and continued to abuse alcohol, illegal and prescription narcotics.
....
21. Respondent Mother resided in a residence owned by her maternal aunt ... from September 2014 through July 2016 and paid a reduced rent.
22. On May 6, 2016, 911 was called after her cousin ... attempted to strike her with his vehicle outside the residence owned by [the maternal aunt].
23. After responding deputies left the scene, Respondent Mother left the porch of her home to confront [her cousin's girlfriend].
24. A physical altercation ensued between Respondent Mother, who was seven (7) months pregnant, [her cousin's girlfriend,] and [her mother,] which culminated in [her stepfather] firing a pistol.
25. Following said altercation, [respondent's maternal aunt and cousin] filed to have Respondent Mother evicted from her residence.
26. Respondent Mother thereafter moved into the residence of [her mother and stepfather].
27. Respondent Mother has maintained two part-time jobs since September 2016 but has been unable to support herself or maintain independent housing without the assistance of others.
28. Respondent Mother has suffered from issues related to substance abuse for more than fifteen (15) years having abused marijuana, cocaine, prescription drugs and heroin.
29. Respondent Mother engaged in a three (3) day opioid prescription drug binge from October 5, 2015 through October 7, 2015 after which she entered into a thirty (30) day rehab program.
30. Respondent Mother's substance abuse has required no less than seven (7) detox programs and three (3) rehab programs none of which have successfully addressed Respondent Mother's substance abuse. Respondent Mother has taken no formal steps to address the domestic violence issues in her life. Although she testified she has no plans to resume her relationship with Respondent Father, she still talks to him about once per month.
These findings indicate that, from the time she relinquished custody of Ann on 16 July 2012, respondent had not made enough progress to demonstrate that she could adequately care for Ann. Respondent never gained independent housing during that time and, despite obtaining two part-time jobs, could not support herself. The drug treatment programs that respondent entered did not benefit her and she continued to struggle with substance abuse. Respondent had a history of domestic violence with the father, and while that domestic violence had ended when the father was incarcerated, respondent maintained contact with him. In another domestic incident, respondent sought out confrontation despite being seven months pregnant, resulting in a physical altercation. These findings support the trial court's conclusion that there was a probability that Ann would be neglected if returned to respondent's care.
While respondent also challenges the trial court's conclusion that the ground for termination listed in N.C. Gen. Stat. § 7B-1111(a)(2) existed in this case, we need not address that challenge given our decision to uphold the trial court's conclusion that respondent's parental rights were subject to termination pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). See In re Humphrey, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) ("A finding of any one of the enumerated grounds for termination of parental rights under [N.C. Gen. Stat. §] 7B-1111 is sufficient to support a termination.").
Lastly, respondent contends that the trial court abused its discretion in determining that it was in Ann's best interests to terminate respondent's parental rights. We disagree.
This Court reviews the trial court's decision to terminate parental rights at the dispositional stage for abuse of discretion. In re J.L.H., 224 N.C. App. 52, 57, 741 S.E.2d 333, 337 (2012). "The trial court is 'subject to reversal for abuse of discretion only upon a showing ... that the challenged actions are manifestly unsupported by reason.' " Id.(quoting Clark v. Clark, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980) ).
The determination of whether termination is in the best interests of the minor child is governed by N.C. Gen. Stat. § 7B-1110.
In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2015).
In assessing the factor stated in N.C. Gen. Stat. § 7B-1110(a)(2), the trial court found that "[t]here is a one hundred percent (100%) probability that Petitioners will adopt the juvenile if the juvenile is cleared for adoption[.]" Respondent contends that the trial court was operating under a misapprehension of law when it made this finding because petitioners did not have the ability to adopt Ann.[3] This same argument was recently rejected by this Court in Matter of D.E.M., --- N.C. App. ----, 802 S.E.2d 766 (2017). In D.E.M., this Court recognized that, while the juvenile was not in an adoptive placement with the petitioners such that the petitioners lacked standing to petition for D.E.M.'s adoption under N.C. Gen. Stat. § 48-2-301(a) (2015), " N.C. Gen. Stat. § 48-2-301(a) expressly authorizes a waiver of the requirement of an adoptive placement 'for cause.' " Id. at ----, 802 S.E.2d at 773. Indeed, "[t]he North Carolina Supreme Court has recognized a trial court's authority to waive the N.C.G.S. § 48-2-301(a) requirement." Id. at ----, 802 S.E.2d at 773 (citing In re Adoption of Byrd, 354 N.C. 188, 191-92, 552 S.E.2d 142, 145 (2001) ).
Similarly, in this case, petitioners did not have standing to petition to adopt Ann given that Ann had not been in an adoptive placement with petitioners. However, "it cannot be said [p]etitioners lack the ability to obtain standing to adopt" Ann given a trial court's ability to waive the adoptive placement requirement. Id. at ----, 802 S.E.2d at 773. Moreover, as in D.E.M., petitioners are Ann's grandparents and legal custodians; they have raised Ann since she was approximately eighteen months old; and they wish to adopt her. See id. at ----, 802 S.E.2d at 773. The evidence at the dispositional hearing showed that Ann was thriving in petitioners' home. Under these circumstances, the trial court did not operate under a misapprehension of law in determining whether petitioners would adopt Ann if parental rights were terminated. In light of this finding and the other dispositional findings, the trial court did not abuse its discretion in terminating respondent's parental rights under N.C. Gen. Stat. § 7B-1110(a). As a result, the trial court's termination order should be, and hereby is, affirmed.
AFFIRMED.
Report per Rule 30(e).
Judges ELMORE and BERGER concur.

A pseudonym is used to protect the identity of the juvenile and for ease of reading.

Respondent purports to challenge findings of fact 22 through 25 of the trial court's termination order. However, rather than argue that these findings are unsupported by clear and convincing evidence, respondent argues that those findings are not significant in determining whether neglect existed as a ground for termination of her parental rights. While labeled as a challenge to the findings, respondent is actually arguing that those findings do not support the trial court's conclusion that neglect existed.

We are cognizant of the fact that, even though a petitioner testified that it was "[a] hundred percent likely" that petitioners would adopt Ann if the trial court terminated parental rights to Ann, the trial court could not credibly find a 100% chance of a future event coming to fruition. However, respondent does not challenge the trial court's finding on this basis.