IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-95

Filed: 1 August 2017

Wilkes County, Nos. 4 JT 127, 14 JT 56-57

IN THE MATTER OF: N.X.A.

and

IN THE MATTER OF: B.R.S.A-D. and D.S.K.A-D.

Appeal by respondents from orders entered 26 October 2016 by Judge David V. Byrd in Wilkes County District Court. Heard in the Court of Appeals 6 June 2017.

*Erika L. Hamby, for petitioner-appellee Wilkes County Department of Social Services.*

*K&L Gates LLP, by appellate guardian ad litem attorney advocate Hillary Dawe, for petitioner-appellee guardian ad litem.*

*Mark L. Hayes, for respondent-appellant mother.*

*Richard Croutharmel, for respondent-appellant father.*

CALABRIA, Judge.

Where the verification of petitions alleging neglect and dependency was made by a State agent acquainted with the facts of the case, it was sufficient to grant jurisdiction to the trial court. Where the trial court found that mother had the resources to pay some amount towards the care of the minor children greater than she in fact paid, the trial court did not err in terminating mother's parental rights for failure to provide care and support. Where one ground exists to terminate mother's

parental rights, we need not address mother's arguments with respect to other grounds.

## I. Factual and Procedural Background

On 10 April 2014, Paul W. Freeman ("Freeman"), an attorney, filed juvenile petitions on behalf of the Wilkes County Department of Social Services ("DSS"). These petitions alleged that N.X.A., B.R.S.A-D., and D.S.K.A-D. (collectively, "the minor children") were neglected and dependent juveniles. The petitions named J.A. ("mother") as mother of all three juveniles, and J.D. ("father") as father of B.R.S.A-D. and D.S.K.A-D. In support of the contention that each of the minor children was neglected, the petitions alleged the following language:

> Upon Information and Belief, on the above date, the Mother of the child was arrested for one or more violations of the Controlled Substances laws. A Methamphetamine Lab (or parts for same) was/were found in ( or around) the home occupied by the child, his siblings and Mother. This poses a significant risk to the child should he be returned to the home, and has posed a substantial risk prior to discovery. The Wilkes County Department of Social Services has been involved with this family for many years dealing with problems of parental substance abuse and improper care/supervision of children.

All three petitions contain the identical language. All three are also verified by Freeman, in a verification section containing the following language:

> Being first duly sworn, I say that I have read this Petition and that the same is true to my own knowledge, except as to those things alleged upon information and belief, and as to those, I believe it to be true.

These petitions were ultimately heard by the District Court of Wilkes County, and in an adjudication and disposition order dated 18 July 2014, the court ordered that the minor children be placed in the custody of DSS. The matter proceeded for two years, and on 12 January 2016, DSS filed verified petitions to terminate mother's and father's parental rights with respect to the minor children. On 26 October 2016, the trial court entered orders on the petitions to terminate parental rights, in which the trial court ordered that those rights be terminated.

Father gave timely notice of appeal. We grant mother's petition for writ of certiorari.

## II. Subject Matter Jurisdiction

In mother's first argument, and father's sole argument, mother and father (collectively, "respondents") contend that the trial court lacked subject matter jurisdiction to terminate their parental rights. We disagree.

## A. Standard of Review

"Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010).

## B. Analysis

Respondents contend that the affidavits filed by DSS lacked the requisite verification to grant jurisdiction to the trial court.

Our General Statutes provide that:

> All reports concerning a juvenile alleged to be abused, neglected, or dependent shall be referred to the director of the department of social services for screening. Thereafter, if it is determined by the director that a report should be filed as a petition, the petition shall be drawn by the director, verified before an official authorized to administer oaths, and filed by the clerk, recording the date of filing.

N.C. Gen. Stat. § 7B-403(a) (2015). Our Supreme Court has held that "verification of a juvenile petition is no mere ministerial or procedural act[,]" but rather "is a vital link in the chain of proceedings carefully designed to protect children at risk on one hand while avoiding undue interference with family rights on the other." *In re T.R.P.*, 360 N.C. 588, 591, 636 S.E.2d 787, 790-91 (2006).

In *T.R.P.*, Wilkes County Department of Social Services, the same DSS as in the instant case, filed a petition alleging that T.R.P. was a neglected juvenile. Although it was notarized, the petition "was neither signed nor verified by the Director of WCDSS or any authorized representative thereof." *Id*. at 589, 636 S.E.2d at 789. On appeal, our Supreme Court noted that, "given the magnitude of the interests at stake in juvenile cases and the potentially devastating consequences of any errors, the General Assembly's requirement of a verified petition is a reasonable method of assuring that our courts exercise their power only when an identifiable government actor 'vouches' for the validity of the allegations in such a freighted action." *Id*. at 592, 636 S.E.2d at 791. The Court emphasized that "[a] trial court's

subject matter jurisdiction over all stages of a juvenile case is established when the action is initiated with the filing of a properly verified petition." *Id.* at 593, 636 S.E.2d at 792. The Court concluded that the trial court's jurisdiction was void *ab initio*, and that "the absence of jurisdiction ab initio logically implies that the matter reverts to the status quo ante." *Id.* at 597, 636 S.E.2d at 794. However, the Court also noted that "because dismissal of this case has no res judicata effect, and recognizing that the circumstances affecting the best interest of T.R.P. may well have changed while this case has been in litigation, we note that any party, including WCDSS, can file a new petition in this matter." *Id.*

Pursuant to Rule 11 of the North Carolina Rules of Civil Procedure, "[i]n any case in which verification of a pleading shall be required by these rules or by statute, it shall state in substance that the contents of the pleading verified are true to the knowledge of the person making the verification, except as to those matters stated on information and belief, and as to those matters he believes them to be true." N.C.R. Civ. P. 11(b). An agent of a party may verify a pleading as well, provided, in relevant part, that "all the material allegations of the pleadings are true to his personal knowledge[.]" N.C.R. Civ. P. 11(c)(2)(a). The agent must also provide reasons that the affidavit is not made by the party directly. N.C.R. Civ. P. 11(c)(2)(b).

The importance of a verification being made upon personal knowledge, and not merely upon "information and belief," is a longstanding truism in North Carolina law.

*See e.g. State ex rel. Peebles v. Foote*, 83 N.C. 102, 106 (1880) (holding that "a verification upon information and belief will not answer unless it gives the sources of information"). This Court has emphasized this, holding that "a verifying attorney . . . must state in an affidavit that the material allegations of the pleadings are true to his personal knowledge, and the reasons the affidavit is not made by the party." *Gaskill v. State ex rel. Cobey*, 109 N.C. App. 656, 659, 428 S.E.2d 474, 476 (1993).

In the instant case, respondents contend that the verification of the initial petitions was not effective to serve as an affidavit. Specifically, respondents note the use of the language "Upon Information and Belief," present in all three petitions. Certainly, that language does not demonstrate personal knowledge by Freeman, but rather that he has been informed and believes the facts alleged to be true.

Respondents overlook a key detail, however. There is an additional provision of Rule 11 which applies to corporations and state officers. Specifically, "when the State or any officer thereof in its behalf is a party, the verification may be made by any person acquainted with the facts." N.C.R. Civ. P. 11(d). Our Supreme Court has held that, with respect to certain issues, such as the provision of foster care, "the County Director of Social Services is the agent of the Social Services Commission[.]" *Vaughn v. N.C. Dep't of Human Res.*, 296 N.C. 683, 690, 252 S.E.2d 792, 797 (1979). Indeed, our General Statutes provide that the director of a county Department of Social Services has the duty "[t]o act as agent of the Social Services Commission and

Department of Health and Human Services in relation to work required by the Social Services Commission and Department of Health and Human Services in the county[.]" N.C. Gen. Stat. § 108A-14(a)(5) (2015).

In the instant case, DSS was implementing the statutory provisions of the Juvenile Code, Chapter 7B of the General Statutes. DSS was giving effect to State law, for purposes defined by the State, as directed by the State agencies which oversee such laws. DSS was therefore acting as an agent of the North Carolina Department of Health and Human Services, a State agency.

As a State agent, DSS, and by extension, its representative Freeman, was not subject to Rule 11(b), governing verification of pleadings by a party, or Rule 11(c), governing verification by agent or attorney, but rather was subject to Rule 11(d), governing verification by the State. This determination is further reinforced by practicality. Many case workers, investigators, and representatives are employed by local Departments of Social Services, and it is not feasible to assume that any one should have complete personal knowledge of a given case; rather, it can be assumed that any one verifying an affidavit does so having reviewed the case materials compiled by the myriad DSS agents and employees assigned to the case, and is thus "acquainted with the facts" as required by Rule 11(d).

In addition, the director of the Department of Social Services has a statutory duty to investigate any reports of abuse, neglect, or dependency of a juvenile and to

take appropriate action, including filing a petition to "invoke the jurisdiction of the court for the protection of the juvenile or juveniles." N.C. Gen. Stat. § 7B-302(c) (2015). A person who reports suspected abuse, neglect, or dependency – presumably a person with "personal knowledge" of the facts – has the right to remain anonymous. *See* N.C. Gen. Stat. § 7B-301(a) (2015) ("[r]efusal of the person making the report to give a name shall not preclude the department's assessment"). And that person who has personal knowledge of facts of abuse, neglect, or dependency has no authority to verify a petition, since that person is not authorized to file a petition under N.C. Gen. Stat. § 7B-401.1, which states that "*Only* a county director of social services or the director's authorized representative may file a petition alleging that a juvenile is abused, neglected, or dependent." N.C. Gen. Stat. § 7B-401.1(a) (2015) (emphasis added). Were we to accept respondents' argument, it would be impossible for directors of Departments of Social Services to carry out their statutory duties to file verified petitions invoking the jurisdiction of the court unless a director or the director's authorized representative personally witnessed the events giving rise to the filing of the petition.

We hold that Freeman, acting as a State agent, was acquainted with the facts of the case, and that therefore his verification was effective pursuant to Rule 11(d) to grant jurisdiction to the trial court.

<u>III. Termination of Parental Rights</u>

In her second, third, and fourth arguments, mother challenges the grounds upon which the trial court terminated her parental rights. We disagree.

## A. Standard of Review

"The standard for review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Clark*, 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984).

"After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2015). "We review the trial court's decision to terminate parental rights for abuse of discretion." *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002).

## B. Analysis

Mother challenges the various bases upon which the trial court terminated her parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a) (2015). Specifically, mother challenges the trial court's determinations pursuant to N.C. Gen. Stat. §§ 7B-1111(a)(1) (parental neglect), (a)(2) (failure to correct circumstances which led to the removal of juveniles), and (a)(3) (failure to provide support for the juveniles).

With respect to the trial court's determination of mother's failure to provide support for the juveniles, N.C. Gen. Stat. § 7B-1111(a)(3) provides that the court may terminate parental rights where:

> The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent, for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

N.C. Gen. Stat. § 7B-1111(a)(3). It is undisputed that the minor children were in the care of DSS for six months prior to the filing of the petition. Mother contends, however, that the trial court failed to make necessary findings as to her ability to pay "a reasonable portion of the cost of care[.]"

Our Supreme Court has held that "[a] finding that a parent has ability to pay support is essential to termination for nonsupport[.]" *In re Ballard*, 311 N.C. 708, 716-17, 319 S.E.2d 227, 233 (1984). However, this Court has further clarified that "there is no requirement that the trial court make a finding as to what specific amount of support would have constituted a 'reasonable portion' under the circumstances[,]" and therefore that the only requirement is "that the trial court make specific findings that a parent was able to pay some amount greater than the amount the parent, in fact, paid during the relevant time period." *In re Huff*, 140 N.C. App. 288, 293, 536 S.E.2d 838, 842 (2000).

In the instant case, at the termination hearing, mother testified that she generated income from a house-cleaning business from June of 2015 to January of 2016. She testified that her annual income was between ten and thirteen thousand dollars. Further, the trial court found that mother "claimed her minor children as dependents for tax purposes while they were in the custody of [DSS], receiving a significant tax refund amounting to thousands of dollars for the year 2015." This finding, unchallenged by mother, is presumed supported by competent evidence and binding upon this Court. *See In re J.K.C.*, 218 N.C. App. 22, 26, 721 S.E.2d 264, 268 (2012) (citing *Koufman v. Koufman,* 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). Despite this evidence of income and tax refunds, the trial court found that mother "paid no child support prior to the filing of the petition in this matter." Based upon these findings, the trial court found that mother "willfully failed to pay a reasonable portion for the cost and care for the minor children for a period of six (6) months preceding the filing of the Petition[.]"

Upon review, we hold that the trial court's findings make clear that mother was able to pay some amount greater than the amount she did in fact pay, which was nothing. As such, we hold that the trial court did not err in terminating mother's parental rights on the ground of a failure to pay a reasonable portion for the care of the minor children while in the custody of DSS.

Because we hold that the findings of fact supported grounds for termination of parental rights under one subdivision of N.C. Gen. Stat. § 7B-1111(a), we need not address mother's remaining arguments. *See Huff*, 140 N.C. App. at 293, 536 S.E.2d at 842.

NO ERROR.

Judges BRYANT and STROUD concur.