HUNTER, JR., Robert N., Judge.
Respondent appeals from the trial court's orders terminating her parental rights to B.D. ("Bailey") and C.D. ("Charlie").[1] On appeal, Respondent contends the court erred by concluding termination of her parental rights was in Charlie's best interests. Respondent does not bring forth any appellate argument regarding termination of her parental rights to Bailey. We dismiss in part, and affirm in part.
I. Factual and Procedural Background
On 31 May 2016, Chatham County Department of Social Services ("DSS") obtained nonsecure custody of Charlie and filed a juvenile petition alleging him to be a neglected and dependent juvenile.[2] The petition alleged the following narrative. On 19 May 2016, Respondent was kicked out of Chatham Recovery. On 27 May 2016, Respondent tested positive for methamphetamine, marijuana, opiates, and cocaine. On 28 May 2016, DSS received a referral, which averred Respondent was in the University of North Carolina Emergency Department for psychiatric evaluation. Although Respondent and her children had been seen on the campus for several hours prior to going into the emergency department, Respondent did not know why she was there.[3] While she was in the emergency department, Respondent fell and was unable to sign her name. Respondent tested positive for amphetamines, benzodiazepines, and methadone. At the time of the filing of the petition, Respondent was still hospitalized.
The petition further alleged the family had an extensive history with Child Protective Services, dating back to 2008 in Alamance, Caswell, and Chatham counties. The history involved issues with domestic violence, improper supervision, injurious environment, substance abuse, sexual abuse, physical abuse, and mental illness.
Following a hearing held on 14 July 2016, the trial court entered an adjudication and disposition order on 22 September 2016. The trial court concluded Charlie was a dependent juvenile and continued Charlie's custody with DSS. The court ordered Respondent to do the following: (1) complete a substance abuse assessment and follow recommendations; (2) submit to random urine and/or hair follicle drug screens as requested by DSS; (3) complete the assessment for Family Drug Treatment Court and follow recommendations; and (4) complete a psychological and parental evaluation and follow recommendations.
The trial court held a permanency planning hearing on 8 December 2016 and entered an order on 9 February 2017. The trial court found Charlie could not be returned to Respondent's custody in the following six months due to: (1) "severe trauma" while living with his parents, including physical abuse, sexual abuse, and exposure to domestic violence and criminal activity; (2) Respondent's failure to protect Charlie; (3) Respondent's failure to provide Charlie with services to address the abuse and neglect; (4) Respondent's history of substance abuse; and (5) following the filing of the juvenile petitions, Respondent tested positive for methamphetamines, marijuana, cocaine, opiates, amphetamines, benzodiazepines, methadone, and alcohol on "several drug screens[.]"
The court also found Respondent completed a psychological evaluation, which resulted in a recommendation that reunification should not be considered until Respondent acknowledged her substance abuse problem and its impact on her children.[4] The trial court relieved DSS of further efforts toward reunification and established the primary permanent plan for Charlie as adoption, with a secondary plan of reunification.
On 12 April 2017, DSS filed a motion to terminate Respondent's parental rights to Charlie, pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect), (3) (failure to support), and (6) (dependency). N.C. Gen. Stat. § 7B-1111(a)(1), (3), (6) (2017).[5] The court held termination of parental rights hearings on 13 July 2017 and 6 September 2017.[6]
DSS called Jennifer Thomas, the social worker assigned to Charlie's case. Thomas believed it was in Charlie's best interest to be adopted.
DSS next called Gerard Tucker, Charlie's guardian ad litem . Tucker first visited Charlie during a visitation with Charlie's foster mom. Following the initial visitation, Tucker met with Charlie on a monthly visit, either at school, at the foster home, or at daycare. Tucker also spoke with Charlie's teachers and therapists.
In September 2016, Tucker first met Respondent during a visitation at a DSS office. Tucker attended another visitation session in October 2016 and spoke with Respondent.
At the time of the September 2017 hearing, Charlie, age 9, was in the hospital. Tucker and Charlie discussed adoption, and Charlie "[wa]s not opposed to adoption, that's for sure." Tucker believed Charlie would need help and therapy before being adopted, but hoped the adoption would be able to happen. Whenever Charlie was "healthy," Charlie was "[a]bsolutely" adoptable.
Respondent testified on her own behalf. Respondent intended to continue therapy and would comply with any other recommendations. She was concerned about Charlie's and Bailey's safety. Were Charlie and Bailey returned to her custody, she would attend "continue on the right track of healing and recovery[.]" She believed reunification to be in Charlie's and Bailey's best interests.
On 5 December 2017, the trial court entered an order terminating Respondent's parental rights to Charlie, pursuant to N.C. Gen. Stat. § 7B-1111 (a)(1) (neglect) and (6) (dependency). The trial court also concluded it was in Charlie's best interests for Respondent's parental rights to be terminated. See N.C. Gen. Stat. § 7B-1110(a) (2017). On 22 December 2017, Respondent filed timely notice of appeal.
II. Standard of Review
"We review the trial court's decision to terminate parental rights for abuse of discretion." In re Anderson , 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002) (citation omitted). "The trial court is subject to reversal for abuse of discretion only upon a showing ... that the challenged actions are manifestly unsupported by reason." In re J.L.H. , 224 N.C. App. 52, 57, 741 S.E.2d 333, 337 (2012) (quotation marks and citation omitted) (alteration in original).
While Respondent acknowledges this Court reviews the decision to terminate parental rights for abuse of discretion, she argues a 2005 amendment to N.C. Gen. Stat. § 7B-1110(a)"compel[s] this Court to apply a de novo review to the best interests determination[.]"
In 2005, the General Assembly amended N.C. Gen. Stat. § 7B-1110, adding subsections (a)(1) through (a)(6). Act of Sept. 14, 2005, ch. 398, sec. 17, 2005 N.C. Sess. Laws 1455, 1463. Although our legislature mandated the trial court to consider six criteria in making its best interest determination, this does not change the fact the trial court's determination is discretionary. This Court continued to apply the abuse of discretion standard to the best interests analysis since the 2005 amendments went into effect. See In re N.X.A. , --- N.C. App. ----, ----, 803 S.E.2d 244, 248, disc. review denied , --- N.C. ----, 807 S.E.2d 148-49 (2017) ; In re A.B. , 245 N.C. App. 35, 41, 781 S.E.2d 685, 689, disc review denied , 369 N.C. 182, 793 S.E.2d 695 (2016) ; In re L.H. , 210 N.C. App. 355, 362, 708 S.E.2d 191, 196 (2011) ; and In re R.B.B. , 187 N.C. App. 639, 648, 654 S.E.2d 514, 521 (2007), disc. review denied , 362 N.C. 235, 659 S.E.2d 738 (2008). We are bound by prior opinions of this Court as to the standard to be applied-abuse of discretion. In re Civil Penalty , 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (citation omitted) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").
III. Analysis
A. Termination of Respondent's Parental Rights to Bailey
DSS filed a motion to dismiss Respondent's appeal as to termination of her parental rights to Bailey. Respondent filed notice of appeal from the order terminating her parental rights to Bailey. However, Respondent did not present any argument regarding the termination order and abandoned any issues on appeal. N.C. R. App. P. 28(a) (2017). We grant DSS's motion and dismiss Respondent's appeal in regard to her parental rights to Bailey.
B. Termination of Respondent's Parental Rights to Charlie
"The termination of parental rights statutes provide for a two-stage termination proceeding: an adjudication stage and a disposition stage." In re D.H. , 232 N.C. App. 217, 219, 753 S.E.2d 732, 734 (2014) (citation omitted). "After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a).
In deciding whether terminating the parent's rights is in the juvenile's best interests, the trial court must consider and make findings about the following criteria, insofar as they are relevant:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a).
Here, the trial court addressed each of the statutory factors set forth in N.C. Gen. Stat. § 7B-1110(a) in the following pertinent findings of fact:
45. It is in the best interest of the minor child to terminate the parental rights of his natural parent, [Respondent], named above. In support of this ultimate finding of fact, the court specifically finds as follows:
a. This court references and incorporates Findings of Fact numbers 1 through 45 set forth above.
b. Termination of Respondent mother's parental rights is necessary to implement the permanent plan of adoption.
c. Legally severing parental rights is a barrier to the adoption of [Charlie], and terminating Respondent mother's rights will aid in the accomplishment of the permanent plan.
d. [Charlie] is nine years old.
e. There is a bond between [Charlie] and Respondent mother. He has said that he misses his mother, but also talks about how [Respondent] would let him do whatever he wanted. Respondent mother lacked appropriate boundaries for [Charlie].
f. [Charlie] has a positive bond with his current foster mother. She ensures that he attends therapy, diligently watches his behaviors and seeks help when appropriate, including seeking hospitalization. [Charlie] appreciates when the foster mom visits.
g. A potential adoptive placement has not yet been identified due to the need to therapeutically stabilize [Charlie] and terminate his parents' rights, but he has great potential for adoption with continued therapeutic support.
Respondent did not challenge these findings, and, accordingly, they are binding on appeal. In re A.R.H.B. , 186 N.C. App. 211, 214, 651 S.E.2d 247, 251 (2007) (citation omitted) (stating if respondent-parent fails to challenge findings on appeal, the findings are deemed supported by competent evidence and are binding). These findings demonstrate the trial court properly considered each of the statutory factors applicable to the best interest determination. These findings also support the trial court's conclusion termination of Respondent's parental rights was in Charlie's best interests.[7] Therefore, we hold the trial court did not abuse its discretion and affirm the order terminating Respondent's parental rights to Charlie.[8]
IV. Conclusion
For the foregoing reasons, we dismiss Respondent's appeal from the order terminating her parental rights to Bailey and affirm the order terminating her parental rights to Charlie.
DISMISSED IN PART; AFFIRMED IN PART.
Report per Rule 30(e).
Chief Judge McGEE and Judge ARROWOOD concur.

We use pseudonyms to protect the identity of the juveniles and for ease of reading. N.C. R. App. P. 3.1 (2017).

Although Respondent filed notice of appeal from both orders terminating her rights to Bailey and Charlie, she only substantively challenges the termination in regards to Charlie, as discussed infra . Thus, in the interest of brevity, this opinion only includes background relevant to Charlie.

The petition did not allege who saw Respondent and her children.

The order did not state who gave this recommendation.

In between the motion for termination of parental rights and the hearing, the trial court held another permanency planning hearing on 8 June 2017. In an order entered 13 July 2017, the trial court found Respondent failed to provide Charlie with the services needed to address the neglect and abuse. Although she started inpatient drug treatment, she was terminated from the program for non-compliance. The court continued the permanent plan of adoption and secondary plan of reunification.

In the interest of brevity, the opinion only includes witness testimony regarding disposition, as the adjudication portion of the trial court's order is not at issue on appeal.

Respondent argues termination of her parental rights would result in Charlie being a legal orphan, in violation of this Court's holding in In re J.A.O. , 166 N.C. App. 222, 227-28, 601 S.E.2d 226, 230 (2004). However, this case is distinguishable from J.A.O. , as in that case, the guardian ad litem argued it was "highly unlikely" the juvenile would be adopted, due to his age and physical and mental condition. Id. at 228, 601 S.E.2d at 230. Here, Charlie's guardian ad litem testified Charlie was "[a]bsolutely" adoptable when healthy. Additionally, as stated supra , Respondent failed to challenge the trial court's finding Charlie has "great potential for adoption with continued therapeutic support."

We acknowledge this Court recently held "[a] determination regarding the best interest of a child is a 'conclusion of law because it requires the exercise of judgment.' " In re J.R.S. , --- N.C. App. ----, ----, 813 S.E.2d 283, ---- (2018) (quoting Matter of Helms , 127 N.C. App. 505, 510-11, 491 S.E.2d 672, 676 (1997) ) (alterations omitted). In J.R.S. , we reviewed the conclusion of law "only to determine whether it is supported by the findings of fact." Id. at ----, 813 S.E.2d at ---- (citing Matter of Montgomery , 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984) ). If we were to review the best interest determination de novo , our holding would not change. We note in the order, the trial court included its best interest determination as both an ultimate finding and a conclusion of law. "Ultimate facts are the final resulting effect reached by processes of logical reasoning from the evidentiary facts." Anderson , 151 N.C. App. at 97, 564 S.E.2d at 602 (citation omitted). The unchallenged evidentiary findings support this ultimate finding. Alternatively, the findings of fact support the conclusion of law terminating Respondent's parental rights was in Charlie's best interest.