NO. COA13-1055

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

IN THE MATTER OF:                        Mecklenburg County
D.H., D.H., K.H.                         Nos. 09 JT 53-54,
                                               09 JT 56

Appeal by respondent from order entered 27 June 2013 by Judge Elizabeth T. Trosch in Mecklenburg County District Court. Heard in the Court of Appeals 7 January 2014.

> *Twyla Hollingsworth-Richardson for Mecklenburg County Department of Social Services, Youth & Family Services.*
>
> *Poyner Spruill LLP, by Shannon E. Hoff, for guardian ad litem.*
>
> *Peter Wood for respondent-mother.*

DILLON, Judge.

Respondent mother appeals from an order terminating her parental rights as to the juveniles D.H. ("Dora"), D.H. ("David"), and K.H ("Kim").[1] For the reasons stated herein, we affirm.

In February of 2009, the Mecklenburg County Department of Social Services ("DSS") obtained non-secure custody of eleven-year-old Kim, five-year-old David, and four-year-old Dora and

---

[1] Pseudonyms are used throughout this opinion to protect the identity of the juveniles. *See* N.C.R. App. P. 3.1(b).

filed a petition alleging that they were neglected and dependent juveniles. The petition's allegations described respondent's inadequate supervision of the juveniles and substance abuse, as well as her lack of appropriate alternative placement for the children.

The district court entered adjudications of neglect and dependency on 16 April 2009. On 8 February 2012, the court ceased reunification efforts and changed the juveniles' permanent plan to adoption.

DSS filed a petition for termination of respondent's parental rights on 16 October 2012. The district court heard the petition on 15 May 2013. In its order entered 27 June 2013, the district court found grounds to terminate respondent's parental rights based on (1) neglect, (2) failure to make reasonable progress, (3) failure to pay a reasonable portion of the cost of care, and (4) abandonment. N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3), (7) (2011). At disposition, the court found and concluded that terminating respondent's parental rights was in the best interests of each child. N.C. Gen. Stat. § 7B-1110(a) (2011). Respondent filed timely notice of appeal from the termination order.[2]

---

[2] The order also terminated the parental rights of the juveniles' fathers, none of whom has pursued an appeal.

The termination of parental rights statutes provide for a two-stage termination proceeding: an adjudication stage and a disposition stage. *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). In the adjudication stage, the trial court must determine whether there exists one or more grounds for termination of parental rights under N.C. Gen. Stat. § 7B-1111(a). *Id.* If the trial court determines that at least one ground for termination exists, it then proceeds to the disposition stage where it must determine whether terminating the rights of the parent is in the best interest of the child, in accordance with N.C. Gen. Stat. § 7B-1110(a). "'We review the trial court's decision to terminate parental rights [(made at the disposition stage)] for abuse of discretion.'" *In re J.L.H.*, __ N.C. App. __, __, 741 S.E.2d 333, 337 (2012) (citation omitted). "The trial court 'is subject to reversal for abuse of discretion only upon a showing . . . that the challenged actions are manifestly unsupported by reason.'" *Id.* (citation omitted).

In this case, respondent does not challenge the adjudicatory portion of the trial court's order in which the court determined that grounds existed to support termination of respondent's parental rights. Rather, respondent argues that the trial court abused its discretion in the disposition portion of its order in

which the court determined that termination of her parental rights was in the children's best interests. Specifically, respondent argues that the trial court failed to made adequate findings of fact on the dispositional factors set forth in N.C. Gen. Stat. § 7B-1110(a) (2011); and, further, that the court erred in determining that termination of her parental rights was in the juveniles' best interests, given that two of the children are unlikely to be adopted.

N.C. Gen. Stat. § 7B-1110(a) provides that in determining whether terminating parental rights is in a child's best interest, "[t]he court may consider any evidence, including hearsay evidence as defined in G.S. 8C-1, Rule 801, that the court finds relevant, reliable and necessary to determine the best interests of the juvenile." *Id.* This statute further provides the following:

> In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and

the parent.

    (5)    The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

    (6)    Any relevant consideration.

*Id.* We believe that the language of this stature requires the trial court to "consider" all six of the listed factors, and that any failure to do so would constitute an abuse of discretion. The statute, as amended in 2011, also requires that the trial court make certain written findings. *In re J.L.H.*, __ N.C. App. at __, 741 S.E.2d at 338-39. We do not believe, however, that N.C. Gen. Stat. § 7B-1110(a) requires the trial court to make written findings with respect to *all* six factors; rather, as the plain language of the statute indicates, the court must enter written findings in its order concerning only those factors "that are relevant." *Id.* at __, 741 S.E.2d at 339 (holding that "[t]he amended statute now explicitly requires that the trial court to make written findings of fact on all relevant factors from N.C. Gen. Stat. § 7B-1110(a)").

Respondent argues that the trial court erred by not making any written findings in connection with the factors set forth in subparts (1), (2), (3) and (5) of N.C. Gen. Stat. § 7B-1110(a).

Regarding subpart (1), which concerns the age of the children, we agree with respondent that the trial court did not make any findings as to this factor. Respondent argues that the age of each child is a relevant factor because it bears on their adoptability. However, respondent fails to cite any evidence in the record indicating that age was raised as a relevant factor *in this case*. Respondent instead focuses on the following testimony of the DSS worker:

> . . . I'm aware that there are families – or there is at least one family that has expressed an interest in [Dora].
>
> [David], with the right supports in place, I believe that we could find an adoptive home for [David]. It will be a little bit more difficult just given the . . . behavioral issues that he's exhibiting in placement and in school.
>
> And I don't think that it would be a problem to find — [Kim] is a very engageable, very sweet young woman. I don't think there would be any problem in finding an adoptive home for her. *That does get a little bit more difficult with age*, but I think that she could certainly engage with a family if the right family was found for her.

(Emphasis added). We construe this testimony as indicative of the DSS worker's belief that a child's age *can be* a relevant factor in considering a child's adoptability, but not as indicative of any belief on her part that the children's age was a relevant or

influential factor in the present case. Since respondent fails to point to any evidence in the record demonstrating that age was placed in issue as a relevant factor, such that it had an impact on the trial court's decision, we do not believe that the trial court erred in not making specific findings concerning the children's ages in its order.[3]

Next, respondent argues that the trial court erred by making no findings with respect to the likelihood that the children would be adopted, pursuant to N.C. Gen. Stat. § 7B-1110(a)(2). However, we believe that the trial court made the requisite findings concerning this factor. Specifically, the trial court made findings with respect to each child's current emotional state, that each child's emotional state would likely improve once the uncertainty about their status was lifted, and that "[w]ith

---

[3] In *J.L.H.*, *supra*, the trial court did not to make findings regarding the factors listed in subparts (3) and (4) of N.C. Gen. Stat. § 7B-1110(a). *In re J.L.H.*, __ N.C. App. at __, 741 S.E.2d at 337. We determined that those factors were relevant and, accordingly, remanded to the trial court to make findings as to those factors. *Id.* at __, 741 S.E.2d at 338. In determining that those factors were relevant, we noted that they had been placed in issue by virtue of the evidence presented before the trial court; and we specifically recounted the conflicting evidence concerning one of the factors. *Id.* at __, 741 S.E.2d at 337-38. However, unlike in *J.L.H.*, in the case *sub judice*, though the ages of the children were properly "considered," respondent does not point to any evidence indicating that the age of any child was placed in issue such that this factor was "relevant."

continued therapeutic support[,] these children are likely to be adoptable." We believe that these findings are supported by the evidence, including the testimonies of the DSS worker and Dr. Kamillah McKissick. Accordingly, this argument is overruled.

Respondent next argues that the trial court erred by failing to make findings pursuant to N.C. Gen. Stat. § 7B-1110(3), concerning whether termination would aid in the accomplishment of the permanent plan for the juveniles, which in this case is adoption. We believe, however, that the trial court made sufficient findings concerning this factor in its order. Specifically, the trial court found as fact that the children have "experienced significant emotional turmoil over the last four years as a result of their impermanent status in foster care"; that they would significantly improve once they are "free and able" to engage in a relationship with a permanent care provider; that "with therapeutic support[,] these children are likely to be adoptable"; and that any attempts to encourage contact with their mother would be "inconsistent with the children's health, safety, and need for a safe permanent home within a reasonable time." Accordingly, this argument is overruled.

Respondent next argues that the trial court erred by making no findings concerning "[t]he quality of the relationship between

the juvenile[s] and the proposed adoptive parent, guardian, custodian, or other permanent placement[,]" pursuant to N.C. Gen. Stat. § 7B-1110(5). Respondent contends that there was no evidence concerning a potential adoptive parent for any of the children. Indeed, the trial court found that Youth and Family Services "is yet to find a single relative who has cooperated with efforts to assess their home for placement and maintained a willingness to provide a home for these children." However, we have held that the absence of an adoptive placement for a juvenile at the time of the termination hearing is not a bar to terminating parental rights. *See In re Norris*, 65 N.C. App. 269, 275, 310 S.E.2d 25, 29 (1983) ("It suffices to say that such a finding [of adoptability] is not required in order to terminate parental rights."). Therefore, where there is currently no proposed candidate to provide permanent placement, a trial court would not be able to make any findings with regard to subpart (5), since there would be no relationship bond to assess in its decision-making process. In any event, the trial court did identify the children's maternal grandmother as a possible permanent placement provider if she were able to qualify; and the trial court made a number of findings regarding the relationship between her and the children. Accordingly, this argument is overruled.

Finally, respondent argues that the trial court abused its discretion in terminating her parental rights because, she contends, it was unlikely that two of the children would be adopted. However, trial court found as fact that "[w]ith continued therapeutic support[,] these children are likely to be adoptable." We believe that this finding is supported by the evidence, including Dr. McKissick's expert opinion and the testimony of the DSS worker, *supra*. We have carefully reviewed the trial court's order and do not believe that its decision to terminate respondent's parental rights was "manifestly unsupported by reason[,]" *Clark v. Clark*, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980). Accordingly, this argument is overruled; and we affirm the order of the trial court.

AFFIRMED.

Judges McGEE and McCULLOUGH concur.