ARROWOOD, Judge.
Respondents appeal from an order terminating their parental rights to the minor children "Mason,"[1] "Logan," and "Matthew." On appeal, respondents only challenge the termination of their parental rights as to Matthew. For the reasons discussed herein, we affirm the portion of the trial court's order terminating respondents' parental rights to Matthew.
I. Background
Matthew was born in September 2002 to respondent-mother and respondent-father. The family had numerous interactions with Child Protective Services in Davidson, Forsyth, Randolph, and Guilford counties prior to the initiation of the present action. On 9 March 2015, the Guilford County Department of Health and Human Services ("DHHS") received a report that the father of Mason and Logan, "Leonard,"[2] had repeatedly hit the children's older sister "Amanda"[3] with a belt because he suspected she had lied when she stated that she had a minor seizure. Amanda reported that Leonard hit her "often" and had attempted sexual contact with her. The report stated that Amanda had told respondent-mother of these things, and while respondent-mother was upset, she had not taken any action to protect Amanda. Respondent-mother and Leonard entered into a safety plan with DHHS, but after multiple violations of that plan, DHHS filed a juvenile petition on 17 April 2015 alleging that the juveniles were neglected and dependent. DHHS received nonsecure custody of the juveniles on the same day.[4]
Matthew was initially placed in an emergency shelter, but was hospitalized on 28 April 2015 due to seizures and complications from severe Type II diabetes. DHHS noted that Matthew had bedwetting issues and was sometimes unable to make it to the restroom before defecating. Matthew was assessed to have moderately below average cognitive abilities and could read at a first-grade level. DHHS had difficulty finding foster placement for Matthew that could accommodate his "medical, educational, [and] dietary needs[.]" Matthew was in the hospital for thirty days before being placed with suitable foster parents on 28 May 2015.
DHHS filed a voluntary dismissal of its juvenile petition on 9 September 2015, and on the same day filed new juvenile petitions as to all three children, which again alleged that the juveniles were neglected and dependent. The trial court held a hearing on the petitions, after which the court entered a 6 January 2016 order adjudicating Matthew to be neglected and dependent and changing the permanent plan for Matthew from reunification with a concurrent plan of adoption to reunification only with respondent-father and a concurrent plan of adoption. The trial court's order also ceased reunification efforts with respondent-mother and ordered DHHS to pursue termination of her parental rights.[5]
Following a 21 April 2016 permanency planning review hearing, the trial court entered a 9 August 2016 order ceasing reunification efforts with respondent-father and changing the permanent plan to adoption with a concurrent plan of guardianship. On 20 June 2016, DHHS filed a petition to terminate parental rights, alleging as grounds to terminate respondents' rights to Matthew: (1) neglect; (2) willful failure to make reasonable progress to correct the conditions leading to Matthew's removal from the home; and (3) failure to pay a reasonable portion of Matthew's cost of care outside the home. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3) (2017). The petition also alleged dependency as grounds to terminate respondent-mother's parental rights to Matthew. See N.C. Gen. Stat. § 7B-1111(a)(6). The trial court held a hearing on the petition on 29 and 30 January 2018, after which the court entered an 18 April 2018 order terminating respondents' parental rights to Matthew after adjudicating the existence of each ground alleged in DHHS's petition. [R 408, 464-65] Respondents appealed.
II. Discussion
Respondents' appeals solely challenge the trial court's conclusion that it was in Matthew's best interest to terminate their parental rights.
The termination of parental rights statutes provide for a two-stage termination proceeding: an adjudication stage and a disposition stage. In the adjudication stage, the trial court must determine whether there exists one or more grounds for termination of parental rights under N.C. Gen. Stat. § 7B-1111(a). If the trial court determines that at least one ground for termination exists, it then proceeds to the disposition stage where it must determine whether terminating the rights of the parent is in the best interest of the child, in accordance with N.C. Gen. Stat. § 7B-1110(a). We review the trial court's decision to terminate parental rights (made at the disposition stage) for abuse of discretion. The trial court is subject to reversal for abuse of discretion only upon a showing ... that the challenged actions are manifestly unsupported by reason.
In re D.H. , 232 N.C. App. 217, 219-20, 753 S.E.2d 732, 734 (2014) (quotation marks, citations, and brackets omitted).
In determining whether termination of parental rights is in the best interest of the child, N.C. Gen. Stat. § 7B-1110(a) provides in relevant part that:
[i]n each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2017).
In the present case, the trial court made the following findings relevant to its determination that termination of respondents' parental rights was in Matthew's best interest:
b. [Matthew] is fifteen years[ ]old[.]
c. [Matthew] is likely to be adopted. Although [Matthew] has several developmental delays and health concerns, such as his diabetes, he is very sweet and is able to bond with his caregivers. ... The [foster parents] are not willing to adopt [Matthew] due to their advancing age, [the foster mother's] minor health issues, and [the foster parents'] lack of relative caregivers should they be unable to care for [Matthew]. The [foster parents] will allow [Matthew] to remain in their home past his eighteenth birthday. However, [Matthew] is adoptable and DHHS will have greater resources and abilities to search for adoptive placements for [Matthew] once his parental rights are terminated.
d. [Matthew] has a limited bond with [respondent-mother]. He has not seen her since January of 2016. [Matthew] told his Guardian ad Litem ("GAL") on May 18, 2017 that he loves his mother and would like to see her "once in a blue moon." At a visit with his GAL on August 24, 2017, [Matthew] asked if he could see his mother, but was passive when talking about his mother and moved to another topic fairly quickly. [Matthew] has not mentioned his father to the GAL, and any bond between [respondent-father] and [Matthew] is also limited. [Matthew] does not have a typical parental bond with either parent.
e. The permanent plan for [Matthew] is adoption. Termination of parental rights will aid in the accomplishment of [Matthew's] permanent plan. DHHS will be able to search far more widely for an adoptive home for [Matthew] after termination of his parent's rights, and [Matthew] is adoptable. DHHS has made reasonable efforts to effectuate [Matthew's] permanent plan of adoption. Even if an adoptive home for [Matthew] is never located, termination of parental rights is in [Matthew's] interest due to his parents' lack of progress toward reunification and lack of ability and/or willingness to provide a safe and adequate home for him. ...
In challenging the trial court's best interest determination, respondents contend these findings overwhelmingly weigh against termination of parental rights and specifically take issue with the portion of finding of fact c. finding "[Matthew] is likely to be adopted." Respondents contend the finding that "[Matthew] is likely to be adopted[ ]" is not supported by the evidence and emphasize evidence of Matthew's special needs, Matthew's bond with his foster parents, and the lack of an identifiable potential adoptive placement for Matthew, which respondents claim shows Matthew is "not" likely to be adopted.
However, contrary to respondent-father's assertions, findings made at disposition need not be supported by clear, cogent, and convincing evidence; and a best interest determination is not reviewed de novo . Respondent-father incorrectly cites cases reviewing the trial court's determination of grounds for termination at the adjudication stage. See In re J.M.K. , --- N.C. App. ----, ----, 820 S.E.2d 106, 107 (2018) ; In re S.N. , 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008).
We now emphasize that "there is no burden of proof at disposition. The court solely considers the best interest of the child. ... [F]acts found by the trial court are binding absent a showing of an abuse of discretion." In re Dexter , 147 N.C. App. 110, 114, 553 S.E.2d 922, 924-25 (2001). This court has stated that "[t]he standard of review that applies to an assignment challenging a dispositional finding is whether the finding is supported by competent evidence." In re C.M. , 183 N.C. App. 207, 212, 644 S.E.2d 588, 593 (2007). It is not this Court's role to reweigh the evidence when reviewing discretionary dispositional rulings of the trial court.
A guardian ad litem report in evidence supported the trial court's finding that Matthew was likely to be adopted. The guardian ad litem report is competent evidence. Furthermore, evidence supported the trial court's finding that Matthew "is very sweet and is able to bond with his caregivers ... [and] is adoptable[.]" Because competent evidence in the record supports the trial court's finding, the trial court did not abuse its discretion in making the finding.
Respondent-mother also takes issue with the sentence in finding of fact "e.," which states that "[e]ven if an adoptive home for [Matthew] is never located, termination of parental rights is in [Matthew's] interest due to his parents' lack of progress toward reunification and lack of ability and/or willingness to provide a safe and adequate home for him." Respondent-mother contends that this finding shows that the trial court misapprehended the law when conducting its best interest analysis, believing "that the choice was between forever banishing [her] from [Matthew's] life or placing him back in her home and turning a blind eye to her inability to care for him."
While we agree that the sentence in finding of fact "e." may not support the termination of respondent's parental rights, we disagree that the sentence overshadows the remainder of the trial court's findings. Respondents essentially ask this Court to re-weigh the evidence and conclude that the trial court erred because it is unlikely Matthew will be adopted and because it is in Matthew's best interest to remain in his current foster placement given the unique circumstances in this case. Citing In re J.A.O. , 166 N.C. App. 222, 601 S.E.2d 226 (2004), respondent-mother asserts that termination of parental rights serves no purpose unless the juvenile will be adopted. But the facts in In re J.A.O. are distinguishable from the present case.
In In re J.A.O. , this Court held the trial court abused its discretion in determining that it was in the juvenile's best interest to terminate the respondent-mother's parental rights based on facts that the juvenile "[was] a troubled teenager with a woefully insufficient support system[,]" "ha[d] been placed in foster care since the age of eighteen months and ha[d] been shuffled through nineteen treatment centers over the last fourteen years[,]" "ha[d] a history of being verbally and physically aggressive and threatening," and "ha[d] been diagnosed with bipolar disorder, attention deficit hyperactivity disorder, pervasive developmental disorder, borderline intellectual functioning, non-insulin dependent diabetes mellitus, and hypertension." 166 N.C. App. at 227-28, 601 S.E.2d at 230. Based on the juvenile's background, the juvenile's guardian ad litem asserted it was highly unlikely that the juvenile would be adopted and argued to the trial court that it was not in the juvenile's best interest to terminate the respondent-mothers parental rights. Id . at 228, 601 S.E.2d at 230.
Although Matthew was fifteen years old and was found to have developmental delays and health concerns, Matthew's situation is very different than the juvenile's in In re J.A.O. Matthew did not display violent tendencies like the juvenile in In re J.A.O. The evidence supports the trial court's findings that Matthew was "sweet" and "able to bond with his caregivers." Despite Matthew's developmental delays and health concerns, Matthew was in a foster placement where he had developed a bond and a support system with his foster parents. Although the foster parents are unable to adopt Matthew, the trial court found that Matthew was adoptable and was likely to be adopted. Furthermore, the facts in In re J.A.O. were unique in that the juvenile's guardian ad litem also argued against termination of the respondent-mother's parental rights. Here, Matthew's guardian ad litem maintained termination of respondents' parental rights was in the best interests of Matthew. These differences distinguish the present case from In re J.A.O.
The trial court in this case additionally found facts concerning Matthew's bond with respondents and how termination of respondents' parental rights would further the permanent plan for Matthew. Despite Matthew stating that "he loves his mother and would like to see her 'once in a blue moon[,]' " the trial court found that he has a limited bond with his mother and did not have a typical parental bond with either parent. Lastly, the trial court recognized that the permanent plan for Matthew was adoption and found that termination of respondents' parental rights would aid in the accomplishment of the permanent plan because it would enable DHHS to utilize additional resources to search for an adoptive placement.
The record in this case shows that the trial court considered the evidence and made findings of fact addressing the relevant statutory factors in reaching its best interest determination. This Court, if making an independent de novo decision, would likely come to a different conclusion in this case given the unique circumstances of Matthew's foster placement. However, under the review we must perform, we cannot say the trial court's determination that it was in Matthew's best interest to terminate respondents' parental rights was "manifestly unsupported by reason." Clark v. Clark , 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980). Therefore, the trial court did not abuse its discretion.
III. Conclusion
For the reasons discussed above, the trial court's termination of respondents' parental rights is affirmed.
AFFIRMED.
Report per Rule 30(e).
Judges STROUD and TYSON concur.

Pseudonyms are used throughout the opinion to protect the identity of the juveniles and for ease of reading.

The father of Mason and Logan is not a party to this appeal.

Amanda reached the age of majority during the pendency of this action and is not involved in this appeal.

The 17 April 2015 juvenile petition and nonsecure custody order in the record list Mason and Logan but not Matthew. No nonsecure custody order as to Matthew was included in the record. However, the trial court's termination order reflects that DHHS obtained nonsecure custody of all three juveniles on that date.

Respondent-mother appealed from this order, and this Court subsequently affirmed. In re M.F.B. , --- N.C. App. ----, 793 S.E.2d 287 (2016) (unpublished).