IN THE SUPREME COURT OF NORTH CAROLINA

No. 354A19

Filed 20 November 2020

IN THE MATTER OF: C.B., J.B., E.O., C.O., & M.O.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from order entered on 19 July 2019 by Judge Wayne L. Michael in District Court, Davie County. This matter was calendared in the Supreme Court on 7 October 2020 and determined without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Holly M. Groce for petitioner-appellee Davie County Department of Social Services.*

*Ellis & Winters, LLP, by Steven A. Scoggan, for appellee Guardian ad Litem.*

*Mary McCullers Reece for respondent-appellant mother.*

HUDSON, Justice.

Respondent, the mother of the minor children, C.B. (Connor),[1] J.B., E.O., C.O., and M.O., appeals from the trial court's order terminating her parental rights. Because we determine the trial court did not abuse its discretion in determining that it was in Connor's best interests to terminate respondent's parental rights, we affirm the trial court's order.

---

[1] A pseudonym is used to protect the juvenile's identity and for ease of reading.

## I.    Factual and Procedural Background

Respondent has a history with the Davie County Department of Social Services (DSS) due to improper supervision and care of her three oldest children. Connor, along with two of her other children, was previously removed from respondent's care in 2013 and adjudicated to be neglected and dependent juveniles. They were returned to respondent's custody in 2014.

Respondent now has five children, each with medical or psychological needs that require significant care. Connor has been diagnosed with autism, oppositional defiant disorder, and attention deficit hyperactivity disorder. He has significant behavior difficulties, including kicking, hitting, cursing, cheating, and yelling.

In January 2016, DSS received a report alleging concerns of improper supervision of the children and an injurious environment. DSS found that the children were chronically dirty and not receiving proper hygiene and that the home was cluttered, filthy, and in disarray. The report was substantiated for neglect and in-home services were provided for the family.

DSS and the in-home services team made multiple home visits from March to May 2016 in which they observed "[a] pattern of the children being dirty, the home being cluttered, in disarray, and lack of supervision" which placed the children at risk. During a 7 July 2016 home visit, a social worker observed Connor to be "out of control[,]" running around the house, jumping from the top of the bunk bed near a ceiling light fixture, and not being properly supervised. Since the January 2016

report, DSS received several additional reports regarding the care of the children, and the parents failed to make any improvement in the condition of the home.

On 12 July 2016, DSS filed juvenile petitions alleging the children were neglected and dependent juveniles and DSS obtained non-secure custody. The children were adjudicated to be neglected and dependent juveniles on 15 August 2016. In a separate disposition order entered on 28 September 2016, the trial court ordered respondent to complete a psychological evaluation and parenting assessment and follow all recommendations; participate in individual counseling, family counseling, and medication management and follow all recommendations; participate in parenting classes and follow all recommendations; attend all medical appointments for the three youngest children; participate in shared parenting with all of the foster families; and submit to random drug screens.

Respondent complied with some aspects of her case plan. However, she failed to demonstrate any appreciable progress in improving her parenting skills or in being able to manage, control, and meet the needs of her five special needs children. The trial court suspended respondent's supervised visitation in March 2018.

On 18 March 2019, DSS filed a petition to terminate respondent's parental rights to all five children alleging the grounds of neglect and willful failure to make reasonable progress to correct the conditions that led to the children's removal from

her care. *See* N.C.G.S. § 7B-1111(a)(1)–(2) (2019).[2] Following a 28 June 2019 hearing on the petition, the trial court entered an order on 19 July 2019 concluding that grounds existed to terminate respondent's parental rights as alleged in the petition, and that terminating respondent's parental rights was in the best interests of the children. Respondent appealed.

## II.     Analysis

On appeal respondent does not challenge the trial court's adjudication of grounds to terminate her parental rights under N.C.G.S. § 7B-1111(a)(1) and (2) or the trial court's decision regarding the best interest of four of her children. She argues the trial court erred in its dispositional decision by determining that termination of her parental rights was in the best interest of her oldest child, Connor. Specifically, respondent argues that the trial court failed to make necessary findings of fact as required by N.C.G.S. § 7B-1110(a), and that the court's findings did not support its conclusion that termination was in Connor's best interests. We disagree.

The termination of a parent's parental rights in a juvenile matter is a two-stage process consisting of an adjudicatory stage and a dispositional stage. *See* N.C.G.S. § 7B-1109, -1110 (2019). "If during the adjudicatory state, the trial court finds grounds to terminate parental rights under N.C.G.S. § 7B-1111(a), it proceeds to the dispositional stage where it must determine whether terminating the parent's

---

[2] DSS also petitioned to terminate the parental rights of the children's fathers. However, none of the fathers are parties to this appeal.

rights is in the juvenile's best interest." *In re J.J.B.*, 374 N.C. 787, 791 (2020) (cleaned up). In determining whether termination of parental rights is in the best interests of the juvenile,

> the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2019).

"The trial court's assessment of a juvenile's best interests at the dispositional stage is reviewed solely for abuse of discretion." *In re A.U.D.*, 373 N.C. 3, 6 (2019). "[A]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re T.L.H.*, 368 N.C. 101, 107 (2015) (citing *State v. Hennis*, 323 N.C. 279, 285 (1988)). "We review the trial court's dispositional findings of fact to determine whether they are supported by competent evidence." *In re J.J.B.*, 374 N.C. at 793.

Here, the trial court made the following pertinent findings regarding the statutory factors set forth in N.C.G.S. § 7B-1110(a) as they pertain to Connor:

18. . . .

a. [Connor] is 11 years old. . . .

b. The children are each placed in foster homes and are doing well. . . . There are no relative placements available for the children.

c. Termination of the parental rights of Respondent Mother, [and the children's fathers] will aid in accomplishing the plan of care for the juveniles which is currently TPR/adoption.

d. . . . [Connor] is placed in a therapeutic foster home. This is not an adoptive home but his behavior has improved there. DSS will continue to look for a forever home for him.

e. The children once had bonds with Respondent Mother . . . . However, the children have now spent nearly three years in foster care and the bond is diminishing. All visits ceased in March 2019. . . .

f. There are no barriers to this adoption except for this termination of parental rights. The likelihood of adoption is high with all children except [Connor] [for] who[m] [it] remains unknown at this time.

g. Respondent Mother and Respondent Father [ ] are no longer together. The needs of the children are great and require significant intervention.

h. . . . [Connor's] behavior ha[s] improved in [his] most recent placements. . . .

19. It is in the best interest of the child that the parental rights of Respondent Mother [and the children's fathers] be terminated.

## A. Challenges to Findings

In her brief, respondent challenges the trial court's finding "that the termination of [her] parental rights would help to achieve permanence for all of [her] children" as it relates to Connor, arguing that this finding is unsupported by the evidence. However, the trial court made no such finding. The trial court found only that termination "will aid in accomplishing the plan of care for the juveniles which is currently TPR/adoption." At the hearing, the social worker testified that the permanent plan for the children is termination of parental rights and adoption and that the termination of the parents' parental rights would aid in achieving that plan. The guardian ad litem's (GAL's) report, admitted into evidence at the hearing, stated the same conclusion. Therefore, this finding is supported by competent evidence.

Respondent further argues that "in substance, the trial court's 'finding' as to likelihood of adoption and accomplishment of the permanent plan amounted to a finding that there was insufficient information to make a determination about these factors." As stated above, the trial court made a finding regarding Connor's permanent plan and that finding was supported by competent evidence. Although the trial court found that Connor's likelihood of adoption was "unknown[,]" the trial court need not find a likelihood of adoption in order to terminate parental rights. *See, e.g.*, *In re A.R.A.*, 373 N.C. 190, 200 (2020) ("[T]he absence of an adoptive placement for a juvenile at the time of the termination hearing is not a bar to terminating parental rights." (alteration in original) (quoting *In re D.H.*, 232 N.C. App. 217, 223 (2014))).

Therefore, we hold the trial court made the requisite findings under N.C.G.S. § 7B-1110(a)(2)–(3).

Respondent also challenges the trial court's finding that there were "no barriers to adoption except for this termination of parental rights" as it relates to Connor, arguing that this finding is unsupported by the evidence. She argues that Connor's "severe behavioral and mental health issues" rendered him difficult to care for and "landed him in at least nine different placements[.]" She further argues that even if "Connor were able to 'step down' from a therapeutic setting, DSS would still need to identify a family willing to adopt" and "if an adoptive family were to step forward, Connor's consent would be required before any adoption could occur." *See* N.C.G.S. § 48-3-601 (2019). Respondent's arguments are misplaced.

The trial court's findings show that although Connor had issues that made it difficult to determine the likelihood of his adoption, the court did not find those issues to be barriers that would necessarily preclude his adoption. Indeed, the trial court found that Connor's behaviors were improving in his current therapeutic foster home. At the hearing, a social worker testified about the possibility of Connor stepping down to a traditional foster care setting "within the next six months . . . at which time [DSS] would then seek for a foster-to-adopt placement." She further testified that DSS believed they would be able to identify an adoptive family for Connor just as they had been able to do for the other children. Therefore, we hold the trial court's finding that

there were no barriers to adoption except for the termination of parental rights is supported by competent evidence.

Respondent also argues that the trial court erred by failing to make a finding concerning Connor's attitude toward adoption and the extent to which he would consent to be adopted. She argues that because Connor is now twelve years old, he must consent to an adoption, and thus this was a "relevant consideration" under N.C.G.S. § 7B-1110(a)(6) about which the trial court must make a finding of fact. She further argues that there was no evidence presented that Connor wanted to be adopted. This Court recently rejected this argument in *In re M.A.*, 374 N.C. 865 (2020). "To be sure, N.C.G.S. § 48-3-601 provides that a juvenile over the age of twelve must consent to an adoption." *In re M.A.*, 374 N.C. at 880. However, a trial court may waive the minor's consent requirement "upon a finding that it is not in the best interest of the minor to require the consent." N.C.G.S. § 48-3-603(b)(2). Because any refusal by Connor to consent "would not necessarily preclude [his] adoption, we hold that the trial court was not required to make findings and conclusions concerning the extent, if any, to which [the child was] likely to consent to any adoption that might eventually be proposed." *In re M.A.*, 374 N.C. at 880.

Finally, respondent argues that while the trial court found that Connor's bond with respondent had diminished after three years in foster care and that her visitation was ceased, it did not find that Connor's relationship with respondent was detrimental to his well-being. Respondent asserts that "[t]his finding provided little

to support a conclusion that [respondent's] rights to Connor should be terminated." There is no requirement that the trial court make a specific finding that the parent's relationship with the child was detrimental before it can terminate parental rights. The trial court's finding addressed the requisite factor in N.C.G.S. § 7B-1110(a)(4)—the bond between parent and child. Further, "the bond between parent and child is just one of the factors to be considered under N.C.G.S. § 7B-1110(a), and the trial court is permitted to give greater weight to other factors." *In re Z.L.W.*, 372 N.C. 432, 437 (2019).

## B. Best Interest Determination

Respondent contends the trial court's findings of fact do not support its conclusion that termination of her parental rights was in Connor's best interests. In arguing that the trial court's dispositional decision constituted an abuse of discretion, respondent primarily relies on the Court of Appeals' decision in *In re J.A.O.*, 166 N.C. App. 222 (2004).

This case is distinguishable from *In re J.A.O.* Here, although the court found that Connor has significant medical and psychological needs, the severity of those issues does not appear to reach the same level as the juvenile in *In re J.A.O. See also In re J.J.B.*, 374 N.C. 787, 794 (2020); *In re J.S.*, 374 N.C. 811, 824 n. 4 (2020). Although Connor has had at least nine placements in the three years he has been in foster care, the court found that his behaviors were improving in his current therapeutic placement. The juvenile in *In re J.A.O.* was fourteen at the time of the

termination hearing and sixteen at the time the Court of Appeals issued its opinion. Connor was only eleven at the time of the termination hearing and is currently twelve years old. Further, the trial court in this case did not find that adoption was unlikely but instead found that the likelihood of adoption was unknown. Notably, the GAL in this case recommended terminating respondent's parental rights in her report, stating that "[t]he farther [Connor] gets from visitation with his biological family the likelihood of adoption is greater." Additionally, the mother in *In re J.A.O.* had made some reasonable progress towards correcting the conditions which led to the removal of her child from her care, whereas here, respondent failed to make such progress. Instead, the trial court found that the parents "have been unable to correct the conditions that led to children's removal" and that "[their] situation is no better today than it was at the time of the removal."

Respondent argues that this case, as in *In re J.A.O.*, "requires realistic weighing of the likelihood of adoption by an as-yet unidentified adoptive parent against the sense of permanence offered by relationships already in place." To the extent respondent is asking this Court to reweigh the record evidence and to substitute our weighing of the relevant statutory criteria for that of the trial court, we decline to do so as "such an approach would be inconsistent with the applicable standard of review, which focuses upon whether the trial court's dispositional decision constitutes an abuse of discretion rather than upon the manner in which the

reviewing court would weigh the evidence were it the finder of fact." *In re I.N.C.*, 374 N.C. 542, 551 (2020).

Here, the trial court's dispositional findings demonstrate that it considered the relevant statutory criteria in N.C.G.S. 7B-1110(a) and made a reasoned determination that termination of respondent's parental rights was in Connor's best interests. The trial court made findings, supported by competent evidence, concerning Connor's age, the likelihood of adoption for Connor, whether termination would aid in accomplishing the permanent plan of adoption, and respondent's bond with Connor. Because Connor was not in a pre-adoptive placement, the court was not required to make a finding regarding Connor's bond with prospective adoptive parents. *In re A.R.A.*, 373 N.C. at 200. Further, although he did not have an adoptive placement at the time of the hearing, "the lack of a proposed adoptive placement for [the child] at the time of the termination hearing is not a bar to terminating parental rights." *In re A.J.T.*, 374 N.C. 504, 513 (2020).

### III. Conclusion

We are satisfied that the trial court's conclusion that it was in Connor's best interests to terminate respondent's parental rights was neither arbitrary nor manifestly unsupported by reason. For these reasons, we affirm the trial court's order terminating respondent's parental rights.

AFFIRMED.