An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-988

Filed 2 July 2025

Stokes County, Nos. 22JT000075-840, 22JT000076-840, 22JT000077-840

IN THE MATTER OF: J.E.K., L.S.T., W.R.K.

Appeal by respondent from orders entered 29 May 2024 by Judge Thomas B. Langan in District Court, Stokes County. Heard in the Court of Appeals 12 June 2025.

> *David A. Perez, for respondent-appellant mother.*
>
> *Reeves Divenere & Wright, by Anne C. Wright, for petitioner-appellee Stokes County Department of Social Services.*
>
> *James N. Freeman, for Guardian Ad Litem.*

ARROWOOD, Judge.

Respondent-appellant ("mother") appeals from three orders terminating her parental rights as to juveniles J.E.K., L.S.T., and W.R.K.[1] (collectively, "the juveniles"). For the following reasons, we affirm the orders of the trial court.

---

[1] Initials are used to protect the identities of the minors.

## I.  Factual Background

On 25 August 2022, Stokes County Department of Social Services ("DSS") took non-secure custody of the juveniles after DSS received a report that the juveniles were living in an extremely disorderly house with an inattentive mother who had potential drug issues.  A social worker made contact with the family, finding the home in a dangerous condition and in disarray, and mother's mouth covered in sores, indicating drug use.  The family had a CPS history involving an injurious environment and domestic violence, and mother had been diagnosed with a variety of drug- and mental health-related disorders; her urine screen on 25 August was positive for methamphetamine and fentanyl.  The father of the juveniles ("father") was in prison when this case was initiated.

On 6 September 2022, the trial court granted permanent legal and physical custody of J.E.K. and L.S.T. to their maternal grandmother.  At a hearing on 1 December 2022, the trial court established a primary plan of reunification at to all of the juveniles.  The order found that mother was not cooperating with drug screens, but that her visits with her children were going well.  The juveniles had been placed in foster homes, and their maternal grandmother did not appear in court.  On 13 December, father overdosed, but was revived by an EMS application of Narcan.

The next permanency planning hearing was 30 March 2023, where the court found that mother had failed to show up for eleven drug screens dating back to 13 September 2022. Of the four drug screens she did receive, one was negative, two

were positive for fentanyl and one was positive for cocaine, hydrocodone, methamphetamines, opiates, and amphetamines. She also failed to attend appointments to address her mental health and substance abuse. Father also failed to show up for a number of drug screens, and one of his visitations ended early due to his impairment. He was ultimately removed from the visitation schedule after he failed to attend two consecutive visitations. The trial court entered an order maintaining reunification as the primary plan and ending father's visitation.

In April 2023, mother admitted to using fentanyl, and both she and father were failing to make weekly contact with the social worker following the March hearing. Mother tested positive for amphetamines on 29 June. The trial court changed the primary plan to adoption that same day. As the year progressed, mother continued to either fail to show up for drug screens, or test positive for fentanyl, cocaine, and methamphetamines. Mother missed appointments to set up visitation with her children and failed to maintain contact with her social worker. Father tested positive for cocaine, fentanyl, and methamphetamines in August, and later that month was reincarcerated. The trial court scheduled a hearing to review termination of parental rights.

At the adjudication hearing, the trial court found that appropriate grounds existed for the termination of mother's parental rights. The court found that "mother has failed to address her mental health, substance abuse, domestic violence, housing and financial insecurity, and her parenting challenges, which caused the juvenile[s]

to be removed from her care." At the disposition hearing, the trial court found that the juveniles were well-bonded to the families that intended to adopt them, that the likelihood of adoption was high, and that termination of mother's parental rights would aid in adoption. Mother's parental rights were subsequently terminated, and she entered notice of appeal on 26 June 2024.

## II. Discussion

Mother raises one issue on appeal, that the trial court erred and abused its discretion in determining that it was in the best interest of the juveniles to terminate the parental rights of mother, when improper findings were made under the criteria of N.C.G.S. § 7B-1110(a)(2) and (3). We disagree.

### A. Standard of Review

Termination of parental rights involves two hearings, each with their own standard of review. The trial court uses the first, adjudicatory, hearing to determine whether any grounds exist for the termination of parental rights under N.C.G.S. § 7B-1111. N.C.G.S. § 7B-1109(e) (2024). The standard of review for this hearing "is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Clark*, 72 N.C. App. 118, 124 (1984). We review conclusions of law *de novo*. *In re K.J.M.*, 288 N.C. App. 332, 339 (2023). At the second, dispositional, hearing the trial court determines whether it is in the best interest of the child for the parent's rights to be terminated. N.C.G.S. § 7B-1110(a). We review a trial court's decision to terminate a

parent's rights at this hearing for abuse of discretion. *In re Shepard*, 162 N.C. App. 215, 222 (2004).

### B. Determination of Juvenile's Best Interest

Once grounds for the termination of parental rights have been found by the trial court at the adjudication hearing, the trial court considers the following six criteria in determining whether termination is in the juvenile's best interest:

> (1) The age of the juvenile.
> (2) The likelihood of adoption of the juvenile.
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
> (4) The bond between the juvenile and the parent.
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a). The trial court is required to "consider" all six criteria in making its decision; however, it is not required to make written findings regarding all six, but only for those that are relevant. *In re D.H.*, 232 N.C. App. 217, 220–21 (2014).

At issue in the case *sub judice* are findings of fact made by the trial court relating to the juveniles' father. Before the 12 March 2024 adjudication hearing, their father relinquished his parental rights. A parent who relinquishes his parental rights may revoke the relinquishment within seven days. N.C.G.S. § 48-3-706 (2024). In each disposition order, the trial court found that barriers to the adoption of these juveniles included the fact that the revocation period for father's relinquishment had

not yet expired. The disposition orders were rendered the same day the adjudication hearings were held, 12 March, where father relinquished his rights. Therefore, the revocation period lasted until 19 March 2024. However, the disposition orders were not signed and entered until 29 May 2024, after the revocation period had expired, making these findings of fact factually inaccurate of the date of entry.

The significance of this inaccuracy to mother's appeal is not clear from her brief. Her brief appears to combine the contention that the other findings were insufficient with an argument that the trial court was required to make a final finding regarding father's revocation period, due to its relevance to criteria (2) and (3). However, mother fails to address or challenge any of the other findings of fact or conclusions of law in the disposition order. Two of these conclusions were that adoption was likely for the juveniles, and that termination of mother's parental rights would aid in the accomplishment of the permanent plan, which was adoption. Mother never argues in her brief that father's revocation of his relinquishment of parental rights would make adoption any less likely, nor does she argue that the termination of his rights would not aid the permanent plan. The unchallenged, and therefore binding, findings of fact demonstrated that the juveniles in question lived in welcoming homes and were well-bonded with adults who intended to adopt them, circumstances tailor-made to lead to adoption. Further, it is axiomatic that termination of mother's parental rights would serve a plan of adoption, since adoption could not occur without termination.

If mother reads *In re D.H.* to require written findings for all evidence pertaining to relevant criteria, she is mistaken. There, the holding was limited to forbidding trial courts to fail to enter *any* written findings of fact under relevant criteria; we did not opine on what the nature of the requisite findings had to be. *See In re D.H.*, 232 N.C. App at 221. While the trial court found this revocation period to be relevant enough to place in the findings, whether or not father revoked his relinquishment was not dispositive in this case. Our Supreme Court has previously underscored the language of criteria (2), which is a finding of the *likelihood* of adoption, not certainty, and criteria (3), whether termination would *aid in the accomplishment* of a permanent plan. *In re E.F.*, 375 N.C. 88, 93 (2020) (emphasis in original). The Court held that the fact that the father's rights were not terminated did not render findings under these criteria erroneous. *Id.* This case is similar. Mother presents no evidence that father's continued parental rights would make adoption unlikely, and the evidence from the proceedings indicates that any attempts by father to preserve his rights and thwart adoption would be fruitless.

Mother also cites *In re A.U.D.*, 373 N.C. 3 (2019), which she argues stands for the proposition that the trial court must make a written finding of fact whenever there is conflicting evidence under one of the criteria. Even if this is a correct reading of the case, there was no conflicting evidence presented at the hearing regarding father's relinquishment. Thus, in summary, the trial court did not abuse its discretion by entering disposition orders that contained a factual inaccuracy, where

that inaccuracy did not deprive the court of sufficient findings of fact to support the termination of mother's rights, and where the trial court was not required to correct this finding.

### III.    Conclusion

For the foregoing reasons, we affirm the order of the trial court.

AFFIRMED.

Judges WOOD and FLOOD concur.

Report per Rule 30(e).