An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-644

Filed 18 February 2026

McDowell County, Nos. 22JT000111-580; 22JT000112-580; 22JT000113-580

IN THE MATTER OF: K.T.N., K.J.N., C.A.N.

Appeal by Respondent-Mother from an order entered 22 April 2025 by Judge Robert K. Martelle in McDowell County District Court. Heard in the Court of Appeals 27 January 2026.

> *Aaron G. Walker for petitioner-appellee McDowell County Department of Social Services.*
>
> *Robert C. Montgomery for guardian ad litem.*
>
> *Sydney Batch for respondent-appellant mother.*

WOOD, Judge.

Respondent-Mother ("Mother") appeals from the trial court's order terminating her parental rights to her minor children: K.N. ("Kevin"), K.N. ("Kristin"), and C.N.

("Carol").[1]  Mother argues the trial court erred (1) because the trial court's findings of fact concerning the disposition were not supported by sufficient competent evidence, and (2) by finding that termination of Mother's rights was in the children's best interest.  After careful review of the record, we affirm the trial court's order terminating Mother's parental rights to her minor children.

## I.  Factual and Procedural Background

Mother is the biological mother of Kevin, Kristin, and Carol.  Kevin was born on 4 August 2009 and twins Kristin and Carol were born on 11 September 2016.  Mother gave birth to a fourth child, Veronica, on 12 December 2022.  Veronica was born prematurely and tested positive for cocaine, fentanyl, and methadone.  Mother tested positive for cocaine, fentanyl, and methadone as well.

On 15 December 2022, McDowell County Department of Social Services ("DSS") completed a home visit with Mother during which she admitted to substance abuse.  As a result of information obtained during the home visit, DSS requested Mother provide a Temporary Safety Provider for the minor children.  Mother identified three potential providers, but DSS found all three unsuitable.  As part of its investigation DSS completed hair screens on Kevin, Kristin, and Carol.  On 29 December 2022, DSS received results indicating Kevin's hair screen had tested

---

[1] Pseudonyms are used to protect the identity of the juveniles pursuant to N.C. R. App. P. 42(b).

positive for cocaine and benzoylecgonine. DSS filed juvenile petitions alleging the minor children to be neglected that same day. DSS also obtained nonsecure custody of the children.

On 27 January 2023, Mother signed an Out of Home Service Case Plan. As a part of her case plan Mother agreed to submit to a Comprehensive Clinical Assessment and to comply with random drug screenings when requested by DSS. Mother also agreed to complete parenting classes, obtain and maintain employment, and find suitable housing.

On 23 February 2023, the trial court held a pre-adjudication hearing. Following the hearing, the children were placed in a group home, and Mother was granted phone visitation in addition to supervised visitation.

On 1 June 2023, the trial court held an adjudication hearing. The trial court adjudicated the children neglected and ordered Mother to comply with her out-of-home service agreement with DSS.

On 14 September 2023, the trial court conducted a permanency planning review hearing. The trial court found Mother engaged in substance abuse treatment, was making progress on her case plan, and had passed a drug screen. However, she continued to miss or refuse drug screens. At the conclusion of the hearing, the trial court ordered the permanent plan for the children to be reunification, with a secondary plan of custody or guardianship.

A second permanency planning hearing was held on 4 January 2024. Between the September 2023 permanency planning hearing and the January 2024 hearing, Mother attended multiple medical and school appointments with the children but continued to struggle with substance abuse, testing positive for cocaine and related metabolites on 31 October and refusing to take a drug screen on 29 September and 29 November. At the conclusion of the hearing, the trial court left the permanent plan for the children unchanged, with the primary plan remaining reunification.

Following the January 2024 hearing, Mother continued to visit regularly with the children but continued to struggle with substance abuse, testing positive for cocaine on 22 May 2024.

On 6 June 2024, the trial court held another permanency planning hearing. At that hearing, both DSS and the Guardian *Ad Litem* recommended the children's primary permanent plan be changed to adoption with a secondary plan of reunification. At the conclusion of the hearing, the trial court changed the primary permanent plan for the minor children to adoption and granted DSS permission to file a termination of parental rights petition.

On 31 January 2025, DSS filed a petition to terminate Mother's parental rights to each child. On 2 April 2025, the trial court held a hearing on the termination of parental rights ("TPR") petitions. Mother did not attend the hearing. The trial court bifurcated the TPR hearing into two phases, adjudication of the legal grounds and disposition. During the first phase, the trial court heard testimony from the social

worker assigned to the case. The social worker testified concerning Mother's ongoing substance abuse problem. Specifically, the social worker testified that in addition to not engaging in treatment for her substance abuse, Mother did not have appropriate housing, employment, or transportation. During the course of the case, Mother tested positive for controlled substances seven times and refused drug screens twelve additional times. Mother's boyfriend and an adult daughter also living with her both tested positive on multiple occasions for controlled substances. DSS encouraged Mother to seek inpatient substance abuse treatment. She contended she could "get clean" by herself and refused to attend treatment. After leaving her boyfriend's residence, Mother moved to a Super 8 motel, which was not a suitable residence for the children. During the pendency of the case, she had lost two jobs, even though she was capable of being employed, had not paid any child support, and had tapered off her visitation with the children. The trial court concluded grounds existed to terminate Mother's parental rights to the children pursuant to N.C. Gen. Stat. §7B-1111(a)(1),(2), and (3) and then continued to the dispositional phase.

During the dispositional phase, the social worker testified concerning the status of the children. At the time of the hearing, fifteen-year-old Kevin was doing well in high school. Although initially resistant to adoption, he had changed his mind and was willing to be adopted into the home of his sisters. His bond with Mother had declined significantly, and he had asked not to be at visits or to have phone calls with her.

At eight years old, Carol remained the most bonded with Mother, while Kristin had become less engaged. Most of Carol's phone calls with Mother centered around why the children could not live with her, with Carol even offering to save her allowance to help Mother pay for housing and transportation. The twins no longer became upset when Mother missed her visits with them. A family had expressed interest in adopting the twins. Whether the family would also adopt Kevin had not been discussed yet. Although testimony tended to show there had not been any discussion with Kristin and Carol concerning adoption, their social worker believed the children were all highly adoptable.

At the close of evidence on best interests, the trial court concluded it was in the children's best interests to terminate Mothers' parental rights. The Order terminating Mother's parental rights was entered on 22 April 2025. Mother timely appealed from that order.

## II.    Analysis

On appeal, Mother contends the trial court erred (1) because the trial court's findings of fact concerning the disposition were not supported by sufficient competent evidence, and (2) by finding that termination of Mother's rights was in the children's best interest. We disagree.

### A. Findings of Fact

First, Mother argues that portions of finding of fact 32 were not supported by competent evidence and, therefore, conclusion seven was made in error. Mother

contends the trial court erred in concluding "adoption was likely" for the children because the conclusion was not supported by the evidence. Mother argues that because the girls have not been informed of the possibility of adoption, the family has not agreed to adopt Kevin, and the children have only been placed in a group home, there is no evidence of the likelihood of adoption.

If "[a] trial court's finding of fact . . . is supported by clear, cogent, and convincing evidence[, it will be] deemed conclusive even if the record contains evidence that would support a contrary finding." *In re S.R.*, 384 N.C. 516, 520, 886 S.E.2d 166, 171 (2023) (quoting *In re B.O.A.*, 372 N.C. 372, 379, 831 S.E.2d 305, 310 (2019)).

In the case *sub judice,* Mother did not attend the hearing so the only testifying witness was the DSS social worker. During the disposition portion of the hearing, she testified Kevin originally had been resistant to adoption because he did not want to have to change high schools but that he was doing very well academically, was involved in ROTC and sports, and wanted to be able to finish high school where he was. However, he also had expressed recently he would be interested in adoption if he could be adopted into the same home as his sisters.

The family expressing an interest in adopting the girls had discussed with the social worker their belief Kevin should still be heavily involved in their home. The social worker testified she had not yet had the opportunity to relay to the family that Kevin had recently stated that he would be open to adoption with the girls, so she did

not know whether the family would be interested. Overall, she stated, "all these children are good kids, they do well in school, they're highly adoptable." The social worker's testimony is clearly support for the trial court's conclusion that "adoption was likely" for the children. We conclude this finding is supported by clear and convincing evidence and conclusive regardless of any evidence to the contrary upon which Mother attempts to rely. *Id.*

**B. Best Interest Determination**

Mother concedes that grounds exist to support termination of her parental rights. Nevertheless, Mother argues it is not in the children's best interest to terminate her parental rights because DSS did not have an adoption plan in place and did not present evidence sufficient to demonstrate an increased likelihood of adoption if her rights were terminated, and the trial court did not make the necessary findings pursuant to N.C. Gen. Stat. § 7B-1110. We disagree.

Our Supreme Court has clearly instructed,

> [w]hen reviewing a trial court's actions at the dispositional stage, appellate courts review the trial court's assessment of a juvenile's best interests solely for an abuse of discretion. Under this standard, we defer to the trial court's decision unless it is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision.

*In re K.N.L.P.*, 380 N.C. 756, 759, 869 S.E.2d 643, 646 (2022) (cleaned up). The trial court is to consider any evidence which it finds relevant to the best interest

determination as well as the criteria set forth by the legislature. N.C. Gen. Stat. §

7B-1110(a) mandates that the trial courts

> shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a). Although the trial court is required to consider all the

factors listed in N.C. Gen. Stat. § 7B-1110(a), the statute does not require written

findings as to each factor. Rather, the trial court is required to make written findings

only as to the factors "that are relevant." *In re H.D.*, 239 N.C. App. 318, 327, 768

S.E.2d 860, 866 (2015) (quoting *In re D.H.*, 232 N.C. App. 217, 221, 753 S.E.2d 732,

735 (2014)). A factor is relevant "if there is conflicting evidence concerning the factor,

such that it is placed in issue by virtue of the evidence presented before the trial

court." *Id* (cleaned up).

In the case *sub judice,* the trial court explicitly stated it considered:

the age of each of the minor children and each of the factors set forth in N.C. Gen. Stat. § 7B-1110(a). [Kevin] was born August 4, 2009 and is fifteen years of age. [Kevin] has a bond with his mother but is upset with her for leaving him in foster care. [Kevin] has informed the Department and GAL that he does not wish to participate[] in visits with his mother. [Kevin] does very well in school and is now open to adoption. [Kristin] and [Carol] are twins, are eight years old and have some bond with their mother but it has grown weaker as Mother has lost interest in reunification and visitation. During the visits that have occurred with their mother in the last six months, [Kristin] has been less engaged and [Carol] has offered to save her allowance from the cottage to help her mother buy a car and a house. Both [Kristin] and [Carol] are open to adoption and adoption is likely for each of the minor children if the mother's parental rights are terminated: Adoption is the permanent plan for each of the minor children and termination of the respondent mother's parental rights is the only way for each of the minor children's permanent plan to be achieved. All of the minor children are in need of immediate permanence in finding an adoptive home and this outweighs any bond the children have with the respondent mother. Further, the termination of the respondent mother's parental rights and therefore freeing the minor children for adoptive placement will open up more pre-adoptive resources for each of the children and further enable each child's permanent plan to be achieved. The respondent mother initially made some efforts toward reunification with the children but remains addicted to drugs and is incapable of parenting any of the minor children. The children have now been continuously outside the home since December 29, 2022 and the respondent mother is not capable as of the date of this hearing to parent any of the minor children. Adoption will provide needed resources for an adoptive family to provide for each of the minor children's welfare. It is in the best interest of each of the minor children for the parental rights of the respondent mother to be terminated as to each of the minor children.

The trial court clearly considered the necessary information presented by the only available witness and made written findings regarding a majority of the criteria laid out in statute. Mother argues the finding that "Both [Kristin] and [Carol] are open to adoption" was not supported. While true, it is irrelevant. The DSS social worker testified no one had spoken with the girls about adoption because they wanted to be sure it was a real option before presenting such a drastic change. Mother argues the girls could not be "open" to an option with which they had never been presented. However, "if the reviewing court determines that there are findings unsupported by the record, the reviewing court simply disregards those findings and examines whether the remaining findings support the trial court's determination." *In re A.J.L.H.*, 384 N.C. 45, 48, 884 S.E.2d 687, 690 (2023). When we disregard the finding that the girls are open to adoption, we reach the same conclusion. There are numerous findings, under N.C. Gen. Stat. § 7B-1110(a), from which the trial court could find that the termination of Mother's parental rights was in the children's best interest. We hold the trial court did not abuse its discretion.

### III.    Conclusion

For the foregoing reasons, we affirm the trial court's termination of Mother's parental rights.


AFFIRMED.

Judges ZACHARY and ARROWOOD concur.

- 11 -

Report per Rule 30(e).